Jeffrey H. SMILOW, Appellant,

v.

UNITED STATES of America, Appellee.

No. 924, No. 72–1738.

United States Court of Appeals, Second Circuit.

Argued July 13, 1972.

Decided July 20, 1972.

Judgment Vacated Oct. 24, 1972. See 93 S.Ct. 268.

Hyman Bravin, New York City, for appellant.

Henry Putzel, III, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, Joseph Jaffe and Shirah Neiman, Asst. U. S. Attys., on the brief), for appellee.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

Jeffrey H. Smilow, a 17-year old high school student, appeals from a judgment of the United States District Court for the Southern District of New York, Edward Weinfeld, J., holding appellant in contempt for refusing to answer certain questions asked him by a duly constituted grand jury and sentencing him to jail for 30 days unless he purged himself sooner by answering the questions. The district court refused to stay its order and appellant has been committed to the Federal Detention Center at West Street since June 30. Appellant took a prompt appeal and moved in this court for bail pending appeal. The motion was denied by Chief Judge Friendly on July 6, but the appeal was expedited and set down for argument one week later before the next scheduled panel.[1] At oral argument of the appeal, the United States Attorney frankly conceded that there was no real danger that appellant would flee and pointed out that appellant had already been granted relatively low bail in connection with an alleged state offense described below. Under these circumstances, and because of appellant's youth, because we felt that the appeal was not frivolous or taken for delay and that the issues raised were sufficient to justify further consideration and preparation of an opinion, and because completion of the sentence might moot the appeal, we granted bail pending appeal. For the reasons set forth below, we affirm the order of the district court.

The grand jury that summoned appellant is investigating the fire bombing on January 26, 1972 of the Manhattan offices of Columbia Artists Management, Inc. and Hurok Concerts, Inc. The gravity of the investigation is made clear by the Government's allegation that a young woman died as a result of the fire bombing at the Hurok office. Three persons have already been indicted in the Southern District in connection with these fire bombings for violation of 18 U.S.C. §§ 844(i) and 2. Appellant has not been federally indicted but has been charged in the New York State courts with arson in the

1. Section 1826 of Title 28, which empowers a court to summarily order the confinement of a witness who refuses without just cause to testify or provide information pursuant to a court order, provides in subsection (b) that:

Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.
28 U.S.C. § 1826(b).

second degree, N.Y. Penal Law § 150.10 (McKinney's Consol.Laws, c. 40, 1967), in connection with the fire bombing at the Columbia Artists office.

On June 26, 1972, appellant appeared before the grand jury and, after being advised of his rights and conferring with counsel, refused to answer material questions relating to the grand jury's investigation. Thereafter, he persisted in this refusal even though the district judge, after hearing argument on the matter, ordered him to respond. Appellant attempts to justify his recalcitrance on constitutional and statutory grounds, which we discuss below. Noticeably absent from his claims, however, is the fifth amendment privilege against self-incrimination. Appellant has deliberately chosen not to rely on that constitutional provision, in part it seems because the Government is prepared to offer him use immunity pursuant to 18 U.S.C. § 6002. See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■ We begin with appellant's claim that he is privileged from testifying before the grand jury by reason of the first amendment freedom of worship clause. Appellant asserts that as an "observant and committed Jew" he must refuse to answer the grand jury questions or else suffer "Divine punishment and ostracism from the Jewish Community" as an "informer." The legal claim is apparently a novel one and its precise religious basis is not clear from the record before us. But even assuming arguendo that there is such a tenet of Jewish law and that appellant devoutly embraces it, this would not be sufficient justification for appellant's conduct. The Supreme Court has only last month emphasized the duty that rests upon every citizen to furnish to a grand jury evidence of crime, even when the claim is made that doing so interferes with the freedom of the press. Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).[2] And we do not believe that appellant's right to refuse to answer highly relevant questions is any greater than those claimed by petitioners in *Branzburg,* in the face of the compelling state interest in this case in uncovering evidence of serious crimes of violence. Accord, People v. Woodruff, 26 A.D.2d 236, 272 N.Y.S.2d 786 (1966), aff'd mem., 21 N.Y.2d 848, 288 N.Y.S.2d 1004 (1968); In re Williams, 269 N.C. 68, 152 S.E.2d 317, cert. denied, 388 U.S. 918, 87 S.Ct. 2137, 18 L.Ed.2d 1362 (1967).

■ We do not say that bona fide religious views must always give way to the rigid demands of a grand jury investigation. If appellant had refused to appear before the grand jury on the ground that he had been summoned to testify on a Jewish Holy Day, the considerations would be different. Cf. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Recognition of appellant's right to follow his religious beliefs would not then completely nullify society's interest in a thorough investigation. A postponement for a day or two would provide a feasible and sensible accommodation of individual and societal interests. But appellant's claim that he can keep forever hidden possible evidence of serious crime is obviously far different. While courts must be sensitive to the rights of citizens to freely exercise their religious beliefs, see Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), those rights are not absolute. In this case, the reasons for assuming that appellant has vital relevant information, in view of the state court indictment, are clear and no claim is made that these facts can conveniently be obtained

2. In *Branzburg,* the Court specifically noted:

> Until now the only testimonial privilege for unofficial witnesses that is rooted in the Federal Constitution is the Fifth Amendment privilege against compelled self-incrimination.
>
> Branzburg v. Hayes, *supra,* 92 S.Ct. at 2660.

from others. The penalty to be imposed is narrowly drawn to effectuate the goal of obtaining vital testimony. Appellant makes no claim that the grand jury investigation is designed to harass him or those holding his religious beliefs. On this record, therefore, we believe that appellant's first amendment claim is outweighed by the compelling state interest in having the grand jury hear "every man's evidence" bearing on alleged criminal activity that resulted in the death of an innocent person. Branzburg v. Hayes, supra, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626.

██ Appellant also argues that the contempt judgment is invalid because the Government refuses to "affirm or deny" that it had placed an unauthorized wiretap on the telephone of the Jewish Defense League's office, where appellant purportedly worked in his spare time in return for a weekly honorarium of $15. The quotation is from 18 U.S.C. § 3504, enacted as part of the Organized Crime Control Act of 1970, and reproduced in relevant part in the margin.[3] Although the Government has denied illegally overhearing any conversation to which appellant was a party, appellant claims that the Government must also disavow any illegal tapping at all of the office in question. Cf. United States v. United States District Court for Eastern District of Michigan, 407 U.S. 297, 92 S.Ct. 2125, 32 L. Ed.2d 752 (1972).

But appellant is a witness before a grand jury. In United States ex rel. Rosado v. Flood, 394 F.2d 139 (2d Cir.), cert. denied, 393 U.S. 855, 89 S.Ct. 111, 21 L.Ed.2d 124 (1968), we held, before passage of the Omnibus Crime Control and Safe Streets Act of 1968, that we would not interfere with the effort of a state grand jury to require a witness to answer questions even though the witness claimed the questions were based on an illegal wiretap of his own conversation. One basis of our holding was that ordinarily a grand jury witness "cannot impede collection of evidence by the grand jury," 394 F.2d at 141, and in the factual context of that case, we adhered to that policy. In Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court recently held that a provision of the Omnibus Crime Control Act, 18 U.S.C. § 2515,[4] does grant a grand jury witness "just cause" under 28 U.S.C. § 1826(a)[5] for refusing to answer and precludes a finding of contempt upon "a showing that interrogation would be based upon the illegal interception of the *witness's* communications . . .." 92 S.Ct. at 2358. (Emphasis added.) As Mr. Justice White's concurring opinion in *Gelbard* points out, the 1968 statute "unquestionably works a change in the law with respect to the rights of grand jury witnesses." Id. at 2372. The question is how much of a change. We do not

---

3. (a) In any trial, hearing, or other proceeding in or before any . . . grand jury . . .

    (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act . . . .

4. Section 2515 provides:

    Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any . . .

grand jury . . . if the disclosure of that information would be in violation of this chapter.
18 U.S.C. § 2515.

5. Subsection (a) of section 1826 provides:

    Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information . . . the court . . . may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information . . . .
28 U.S.C. § 1826(a).

**806**

read that statute, nor the Court's decision interpreting it, as providing that a grand jury witness may refuse to answer on the ground that the Government has illegally heard someone else's conversation on premises other than those of the witness, however reprehensible that may be. See United States v. Alderman, 394 U.S. 165 n. 9, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968); In re Grumbles, 453 F.2d 119 (3d Cir. 1971); United States v. Doe, 451 F.2d 466 (1st Cir. 1971). Appellant's purported relationship with the Jewish Defense League headquarters—namely, that he worked there in his spare time as a high school student and earned a weekly honorarium of $15—is far too remote for us to conclude that *any* illegal interceptions of conversations there, even those to which appellant was not a party, constituted an invasion of his reasonable expectations of privacy. Moreover, appellant has made no claim or showing that such alleged interceptions were the result of government wiretapping directed at him. Accordingly, we do not believe that on the present state of the law, appellant can justify his refusal to answer on this ground.

Appellant also claims that to compel him to answer questions relating to his conduct on the morning of January 26, 1972 would infringe his "Sixth Amendment rights to a fair trial" and deny him due process because he has been charged in the state courts with committing arson on that date. But appellant's constitutional remedy lies in the fifth amendment privilege against self-incrimination, which he refuses to assert, and not the other constitutional provisions he has cited.

Judgment affirmed. The mandate shall issue seven days from the date hereof to allow appellant a brief opportunity to apply to the Supreme Court for a further stay.