**Consuewella AFRICA, MOVE Organization**

v.

**Judge Levy ANDERSON and A. Benjamin Johnson, Esquire.**

**Civ. A. No. 80–3642.**

United States District Court, E. D. Pennsylvania.

March 25, 1982.

Consuewella Africa, pro se.

Charles W. Johns, Howland W. Abramson, Philadelphia, Pa., for defendants.

A. Benjamin Johnson, pro se.

## OPINION

LOUIS H. POLLAK, District Judge.

This is a civil rights action in which plaintiffs initially sought to recover damages and obtain equitable relief, claiming that at Ms. Africa's criminal trial, conducted in the summer of 1980, she had been deprived of her religious freedom by Judge Anderson's requirement that she be represented by A. Benjamin Johnson, Esquire, as her court-appointed counsel. On December 31, 1980, I entered an Order dismissing the damages claim in plaintiffs' complaint, thereby leaving only an action for a declaratory judgment. Since then, both defendants have filed answers and Judge Anderson has now moved for summary judgment.

The pleadings and the trial transcript and affidavit submitted by Judge Anderson in support of his motion disclose the following facts. Consuewella Africa, a member of the "MOVE" organization, was charged in 1980 with homicide and other offenses arising out of a widely reported confrontation between MOVE and the Philadelphia Police which was prompted in part by MOVE's refusal to permit Philadelphia officials to inspect its Powelton Village headquarters. Ms. Africa's trial was held in the Philadelphia Court of Common Pleas with Judge Anderson presiding, and A. Benjamin Johnson, Esquire, was appointed by the court to represent Ms. Africa. However, during the course of her trial, Ms. Africa sought leave to represent herself, strenuously insisting that the tenets of her religion—the teachings of John Africa which MOVE members follow—prohibited representation by counsel and required instead that MOVE members represent themselves. In response to Ms. Africa's request, Judge Anderson conducted, as he was required to, a colloquy with her to determine whether her decision to waive the right to the assistance of counsel was "knowing and intelligent." *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937). Judge Anderson explained to Ms. Africa that such an inquiry was a necessary predicate to a

trial judge's determination whether a defendant may be permitted to exercise her constitutional right to self-representation. *See Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Judge Anderson concluded that her request to represent herself should be denied since he was unable to establish that her decision was competent and fully informed. Accordingly, the trial continued with Mr. Johnson acting as Ms. Africa's counsel despite her objections.

## Judge Anderson

Before I address Judge Anderson's motion, it may be helpful if I clarify plaintiffs' claim and delineate more precisely the competing constitutional principles present in this case. At bottom, I must determine whether Judge Anderson's decision rejecting Ms. Africa's request to proceed without counsel was a denial of her right, guaranteed by the First Amendment, to the free exercise of her religion. However, lying behind this First Amendment dispute are issues concerning the problematic relationship between the right to counsel and the Sixth Amendment right to self-representation. Thus, while Ms. Africa has not challenged Judge Anderson's decision as a denial of her right to represent herself and has advanced only a First Amendment claim, I must first review his weighing of her proffered waiver of the right to counsel and asserted desire to conduct her own defense, since those issues inform my decision on the ultimate First Amendment question.

■ The principle that an accused may not be convicted unless he has been accorded the right to the assistance of counsel constitutes one of the most fundamental guarantees of a fair trial protected by the due process clause. *Powell v. Alabama*, 287 U.S. 45, 67–68, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932); *Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58 S.Ct. 1019, 1022–23, 82 L.Ed. 1461 (1937); *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1960). At the same time, the benefits of such assistance may be relinquished in favor of the right, grounded in the Sixth Amendment, to conduct one's own defense. *See Faretta v. California, supra,* 422 U.S. at 818–32, 95 S.Ct. at 2532–39. Because of the substantial hazards inherent in proceeding without the benefit of counsel, the right to self-representation is not absolute or automatic. Instead, to satisfy Fifth Amendment concerns, the accused must be made aware of the dangers of self-representation and a trial court must be satisfied that the decision is made on the basis of a knowing, intelligent, and competent assessment of these risks. *See Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541; *Von Molke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323–24, 92 L.Ed. 309 (1947). The crucial importance of such an inquiry into the basis of a proffered waiver of the constitutional right to counsel was defined by the Court in *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023:

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.

A review of the trial transcript leaves no doubt that Judge Anderson made a good faith attempt to ask Ms. Africa questions relevant to the inquiry called for by the Court in *Johnson* and in *Faretta*, and that he properly advised her of the risks she would invite by electing to conduct her own defense. *See* Tr. 19 (Aug. 18, 1980); Tr. 19–22 (Aug. 19, 1980); Tr. 7–9 (Aug. 20, 1980). Indeed, he described to her at some length the need to probe her decision to waive the assistance of counsel:

> [I]n order for the Court to permit you to represent yourself the Court must be assured that your waiver of your Constitutional right to counsel is voluntarily and understandingly made.

Now, if that isn't on the record, then I cannot accept it. Now, these are the rulings of the Supreme Court of Pennsylvania, by which I'm bound.

In order to determine these matters, I have to conduct a colloquy, that is, a discussion with you.

I have to ask you certain questions and you have to answer those questions and you have to answer them responsively.

Tr. at 19–20 (Aug. 19, 1980). And the following day he further explained:

Under the rules of the Supreme Court and the decisions of the Supreme Court of Pennsylvania this Court is required to determine what [sic] you are giving up your right to counsel and the desire to represent yourself has to be knowingly and willingly and voluntarily done. It also has to show that you did so with the knowledge of the consequences, and that's the reason I have to ask you these questions, to determine that.... Now, only under those circumstances can I grant your request to waive your right to counsel and permit you to represent yourself. I'm perfectly willing to do that, if the Court determines that you are doing so understandingly and voluntarily and with the knowledge of the consequences.

Tr. at 7–8 (Aug. 20, 1980).

However, Ms. Africa's conduct during the trial and in discussions with Judge Anderson concerning her desire for self-representation was often disruptive and she openly expressed contempt for the court. *See* Tr. at 20 (Aug. 18, 1980). To some extent, such behavior reflects adversely on her ability to appreciate intelligently the risks of proceeding without counsel especially where the trial is before a jury. In addition, rather than alerting the court to her intention to represent herself prior to trial, Ms. Africa only expressed her desire to conduct her own defense when the trial was already underway. *Cf. Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541 (defendant notified court of his request to represent himself several weeks before trial). Finally, Ms. Africa's incomplete answers to Judge Anderson's questions suggest that her waiver of the right to counsel was not based on a knowing and intelligent assessment of the risks.

During the colloquy with Ms. Africa, the principal obstacle faced by Judge Anderson arose from Ms. Africa's attempt to use his questioning as an opportunity to state her religious objections to the court system in general. For example, following Judge Anderson's inquiry concerning her age and educational background, she responded:

Look, goddamn it, I ain't got to answer the questions the way you want me to answer them. Talk to me about John Africa. I told you I don't believe in your laws, I don't believe in your system and I'm answering the way I been taught to answer. I'm old as life. As simple as that. You the one that's—that believe that system of confusion, one, two, three, four, up, down, back, forth, this is the dog, the cat, the bird. Separation. I don't believe in that bullshit. All I know is life, one life, one system, one God, one universe, one existence.

Tr. at 20–21 (Aug. 18, 1980). And later, she stated:

Let me state something to you now. You say you have to find whether or not I'm responsible enough to represent myself. I'm telling you I am, just by me stating it.... I'm capable of representing myself. I understand the confusion in this courtroom. I understand that you ain't right.

Tr. at 20–21 (Aug. 19, 1980).

Undoubtedly, Ms. Africa was free to hold these views and to express them publicly. However, her freedom to express her religious objections to the judicial system established by the Commonwealth can not, standing alone, serve as the predicate for a trial court's acceptance of her desire to waive the constitutional right to the assistance of counsel. As the Court stressed in *Johnson v. Zerbst, supra,* waiver of important constitutional rights is not to be approved lightly and, therefore, Judge Anderson had a special responsibility to scrutinize her decision carefully to test whether it was based on a full appreciation of the

risks. Of course, Judge Anderson was not entitled to reject her proffered waiver solely because he regarded it as an unwise course of conduct or not in the best interest of her defense, *see Faretta v. California, supra,* 422 U.S. at 834, 95 S.Ct. at 2540, but neither was he free to surrender his responsibility to review the basis of her decision. Indeed, it would have been improper for him to have accepted her waiver simply on the basis of her conclusory statement that she was competent to proceed without counsel. Such an unconsidered endorsement of her assertions would be tantamount to relinquishing the trial court's role as guardian of the constitutional rights of an accused.

Thus, in my view, Judge Anderson's decision, under the due process clause, to deny Ms. Africa permission to exercise her Sixth Amendment right to represent herself appears to have been sound. However, I emphasize at this point that it is not necessary for me to decide as a matter of law whether Judge Anderson's conclusion properly resolved the competing Fifth and Sixth Amendment concerns since Ms. Africa has not directly challenged his decision as a violation of her Sixth Amendment right to self-representation but has chosen to attack his decision on the ground that it infringed on her First Amendment right to the free exercise of her religious beliefs.[1]

With this as preface, I turn to the more troubling question raised by plaintiffs— whether, assuming Judge Anderson's weighing of the Sixth Amendment issue was proper, he also gave due consideration to Ms. Africa's First Amendment interests. In assessing this issue, I am prepared to assume that Ms. Africa was sincerely pursuing genuine religious convictions in asserting her desire to represent herself, notwithstanding the difficulties for such an assumption posed by the Third Circuit's recent decision in *Africa v. Pennsylvania,* 662 F.2d 1025 (3d Cir. 1981), holding that MOVE is not a religion within the meaning of the religion clauses of the First Amendment.[2]

The First and Fourteenth Amendments ensure without qualification that a state may not forbid the holding of any religious belief or opinion, nor may it "force anyone to embrace any religious belief or to say or believe anything in conflict with his religious tenets." *Braunfield v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1145, 6 L.Ed.2d 563 (1961). *See also Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963). However, when the freedom to *act* in accordance with one's religious convictions comes into conflict with a state's efforts to advance some legitimate and compelling interest, then, as the Supreme Court has made clear, the asserted state interest must be weighed against the individual's interest. Presented with such a conflict, a court must undertake the delicate task of determining (a) whether the state's purpose is sufficiently compelling, and (b) whether the manner chosen to achieve such a goal has been tailored with sufficient respect for those whose religiously grounded conduct may conflict with the state's purpose, such that any resulting burden on religious conscience is warranted. *Gillette v. United States,* 401 U.S. 437, 461–62, 91 S.Ct. 828, 842, 28 L.Ed.2d 168 (1971); *Braunfield v. Brown, supra,* 366 U.S. at 603, 81 S.Ct. at 1145; *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1943); *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903–04, 84 L.Ed. 1213 (1940).

At the outset, it seems clear that in seeking to represent herself, Ms. Africa was simply pursuing a course of conduct prompted by her religious principles and beliefs. Ms. Africa's freedom to believe was not in any direct sense abridged by Judge Anderson's denial of her request for

1. Ms. Africa's prayer for relief seeks a declaratory judgment that the challenged procedures "are acts of religious persecution of plaintiff's religion, the teaching of *JOHN AFRICA,* and harassment."

2. The Third Circuit's opinion relied heavily on facts and testimony in the record. Because I do not have before me a similarly developed factual record, I will simply assume that Ms. Africa's convictions were grounded in beliefs that might properly be labelled religious.

self-representation. Only her ability to conduct her own defense in accordance with the teachings of John Africa was restricted. Accordingly, the state interests which Judge Anderson sought to advance by denying her request must be weighed against Ms. Africa's right to proceed in a fashion consistent with her religious views.

Plainly, in trials conducted by its courts, the state has a legitimate and compelling interest in ensuring that the accused's constitutional rights will be protected. The state's interest in fulfilling this responsibility is compelling not only because it advances the general regulatory purpose of assuring public order, but also because it lies at the heart of the state's constitutional obligation to establish procedures which will guarantee that trials are fair. Indeed, as the Supreme Court has observed: "From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law." *Gideon v. Wainwright, supra,* 372 U.S. at 344, 83 S.Ct. at 796.

What makes this case troubling and difficult is that Ms. Africa's asserted right to self-representation, especially since it is grounded in her religious principles, also occupies a special and protected status. In weighing these competing values, I must consider the following questions. Was Judge Anderson, in seeking both to fulfill his obligation to conduct a fair trial and to safeguard the integrity of Ms. Africa's religious beliefs, permitted under the First Amendment to deny her request for self-representation in order to ensure a fair trial even though that denial would burden her right to act according to her religious convictions? Or did the First Amendment require him to devise some broader accommodation of court procedures to secure her religious beliefs?

Addressing a comparable problem, the Second Circuit in *Smilow v. United States,* 465 F.2d 802 (2d Cir.), *vacated and remanded on other grounds,* 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972), held that the free exercise rights of a witness who refused on religious grounds to testify before a grand jury were not violated when the trial court held him in contempt, since the government had a compelling interest in obtaining important testimony. Judge Feinberg thoughtfully set forth the necessary balancing of the competing interests:

> We do not say that bona fide religious views must always give way to the rigid demands of a grand jury investigation. If appellant had refused to appear before the grand jury on the ground that he had been summoned to testify on a Jewish Holy Day, the considerations would be different. Recognition of appellant's right to follow his religious beliefs would not then completely nullify society's interest in a thorough investigation. A postponement for a day or two would provide a feasible and sensible accommodation of individual and societal interests. But appellant's claim that he can keep forever hidden possible evidence of serious crime is obviously far different. While courts must be sensitive to the rights of citizens to freely exercise their religious beliefs, those rights are not absolute. In this case, the reasons for assuming that appellant has vital relevant information, in view of the state court indictment, are clear and no claim is made that these facts can conveniently be obtained from others. The penalty to be imposed is narrowly drawn to effectuate the goal of obtaining vital testimony. Appellant makes no claim that the grand jury investigation is designed to harass him or those holding his religious beliefs. On this record, therefore, we believe that appellant's first amendment claim is outweighed by the compelling state interest in having the grand jury hear "every man's evidence" bearing on alleged criminal activity that resulted in the death of an innocent person.

465 F.2d at 804–05 (citations omitted).

Similarly, Ms. Africa's claim that, under the tenets of her religion, she alone was capable of conducting her defense must be balanced

against Pennsylvania's interest in seeing that trials conducted by its courts are fair and that those who seek to represent themselves only do so knowingly and intelligently.

As I noted earlier, the Fifth Amendment did not permit and the First Amendment did not require Judge Anderson to ratify automatically Ms. Africa's expressed desire to represent herself. Under the Fifth Amendment he had an independent responsibility to review the basis for her decision, see *Faretta v. California, supra; Johnson v. Zerbst, supra,* and under the First Amendment he was entitled at least to weigh the state's interest against the claim that her religion required her to conduct her own defense. *Smilow v. United States, supra.* Consistently with these principles, Judge Anderson, during a discussion with Ms. Africa, stressed that his attempts to inquire about her waiver of counsel were not an attempt to abridge her religious beliefs:

THE COURT: I'm not asking you to believe or not to believe. I'm asking you to follow the rules that this Court must follow.

DEFENDANT: If you ask me to follow them, you are asking me to vacate my beliefs, which I am not going to do.

THE COURT: Are you going to follow the rules of this Court?

DEFENDANT: I just stated for you. In order for me to follow the rules of this Court, I have to vacate my religion, which I am not going to do. My religion teaches me the teachings of John Africa, not the rules of this Court, not the procedures of this court.

Tr. at 3 (Aug. 20, 1980).

█ In my view, because of her complete denial of the need to follow court procedures, no court would be able to accommodate fully Ms. Africa's religious principles short of abandoning altogether its responsibility to examine the basis of her decisions to waive her right to counsel and to represent herself. To be sure, courts must be sensitive to the right of individuals to exercise freely their religious principles. But the protections afforded by the First

Amendment are not so broad as to allow Ms. Africa to nullify the procedures established by the Pennsylvania courts and mandated by other provisions of the Constitution which ensure that trials are conducted fairly. Given the circumstances, Judge Anderson made a responsible and adequate effort to accommodate Ms. Africa's asserted religious beliefs. And he was entitled to conclude that allowing Ms. Africa to proceed without benefit of counsel posed such a significant risk of producing an unfair or inaccurate result that her religious convictions had to yield in the face of that danger.

Accordingly, summary judgment will be granted in favor of Judge Anderson.

*Mr. Johnson*

Although Mr. Johnson has not moved for summary judgment, my disposition of Judge Anderson's motion must also control plaintiffs' claim against Mr. Johnson. In my December 31, 1980 Order, I permitted plaintiffs to proceed against Mr. Johnson on a limited basis, holding that Mr. Johnson could be sued only on a claim that he acted as a collaborator with Judge Anderson to violate Ms. Africa's First Amendment rights. *Africa v. Anderson,* 510 F.Supp. 28, 31–32 (E.D.Pa.1980). Given the narrowness of this claim, it would be anomalous, after having concluded that Judge Anderson is not liable, to permit this action to be maintained against Mr. Johnson, since Ms. Africa's complaint "challenges trial procedures allegedly ordained by Judge Anderson and merely facilitated by Mr. Johnson." *Id.* at 31. Because I have determined that Judge Anderson accorded due respect to Ms. Africa's free exercise right, it follows that judgment must also be entered in favor of Mr. Johnson.