**UNITED STATES of America,**

v.

**Guy Thomas FISHER, Ishmael Muhammed, et al., Defendants.**

**No. 83 Cr. 150 (MP).**

United States District Court, S.D. New York.

Oct. 4, 1983.

---

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., by Philip LeB. Douglas, Asst. U.S. Atty., New York City, for the U.S.

Barry M. Fallick, Rochman, Platzer & Fallick, New York City, for defendant Ishmael Muhammed.

## MEMORANDUM

MILTON POLLACK, District Judge.

Defendant Ishmael Muhammed, one of eight co-defendants in this criminal case, has requested through his attorney that their trial not be conducted on Fridays so that his religious beliefs and practices may be accommodated. According to Muhammed's attorney, Muhammed is of the Muslim faith and observes his sabbath from sundown on Thursday to sundown on Friday.

No previous mention was made by Mr. Muhammed of his religious observance on Fridays, nor did he seek to be excused from Friday attendance at pretrial sessions. A number of weeks ago, at a pretrial conference, the Court announced a five-day-a-week trial schedule; no one commented or objected thereto. The defendant Muhammed is and has been confined in the building adjoining the Courthouse, the Municipal Correctional Center, since his arrest.

The instant request was made to the court on September 14, 1983, approximately two weeks prior to the expected commencement of the trial. Mr. Muhammed has been present in Court on four Fridays out of a total of eleven appearances altogether—not having missed any Friday session in which his interests were involved.[1] His is the only such request from among the eight defendants, albeit that Mr. Muhammed has said that there are others of the defendants who are of the Muslim faith.

There does not appear to be any reported case law on the precise point of whether a court must honor a criminal defendant's request that he not be tried on days on which he observes his religious sabbath. However, it is worth noting at the outset that at least three judges of the Third Circuit viewed a claim identical to Muhammed's as valid on first amendment freedom of religious exercise grounds. In that case, *State of New Jersey v. Chesimard,* 555 F.2d 63 (3rd Cir.1977) (*en banc*), an Orthodox Muslim who was a defendant in a state criminal proceeding sought to enjoin state officials from holding trial on Friday.

The majority in *Chesimard* did not reach the merits of the Muslim's claim, holding that the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) barred an injunction in the case. However, the majority described the claim as "important and sensitive." *Chesimard,* 555 F.2d at 66.

Dissenting Circuit Judge Gibbons, joined by Judges Maris and Van Dusen, disagreed with the majority's *Younger* analysis and reached the merits of the religious free exercise claim:

I have no doubt that the state court order is invalid, given the court's finding that Chesimard's Sabbatarian beliefs are sincerely held.

The right of individuals to be free from governmental restraint upon their free

---

1. Ishmael Muhammed appeared in Court on March 11, 15, 18, 24; April 5; May 4, 20; July 29; August 2; September 6; and October 3, 1983.

exercise of religion is the first stated of the rights enumerated in the Bill of Rights. [cases cited]. The significance of the right is not diminished by an individual's status as a defendant in a criminal prosecution. *See Cruz v. Beto,* 405 U.S. 319 [92 S.Ct. 1079, 31 L.Ed.2d 263], .... Where a person's right to the free exercise of religion is inhibited by state action, the courts will scrutinize the state's chosen means of attaining its goals to determine whether the state has met its obligation to avoid, to the extent possible, infringement of the protected freedom. [citing cases]. The governmental goal or purpose itself will be value-weighed against the protected right of the individual to determine which should prevail, and a purpose of obtaining a government objective even of the highest order, will not justify the imposition of restraint upon the free exercise of religion unless the objective cannot be otherwise achieved. *Wisconsin v. Yoder,* 406 U.S. 205, 215 [92 S.Ct. 1526, 1533, 32 L.Ed.2d 15] (1972); *Sherbert v. Verner,* 374 U.S. 398 [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963); *Braunfeld v. Brown,* 366 U.S. 599, 607 [81 S.Ct. 1144, 1148, 6 L.Ed.2d 563] (1961) [parallel cites omitted]....

[I]n the present case, the efficient and orderly administration of justice is not placed in jeopardy by the removal of one of the five trial days ordinarily available to the court....

In balancing the state interest in prompt criminal trials against the petitioner's right to observe her religious beliefs, given the facts of this case with the alternatives available to achieve the state's purpose and the limited nature of the disruption of orderly trial proceedings caused by not conducting the trial on Fridays, the petitioner's request should have been honored.

The legal standard which the court is to apply in determining whether Muhammed has a constitutional right to having no trial proceedings on Friday is a well-settled one. The first amendment ensures without qualification that a state may not forbid the holding of any religious belief or opinion, nor may it "force anyone to embrace any religious belief or to say or believe anything in conflict with his religious tenets." *Braunfield v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563 (1961).

In reconciling this first amendment right with important government objectives, such as the efficient, orderly, and fair administration of criminal justice, the court must apply a two part test, as is well described by the recent case of *Africa v. Anderson,* 542 F.Supp. 224 (E.D.Pa.1982) (L. Pollack, J.):

> [W]hen the freedom to *act* in accordance with one's religious convictions comes into conflict with a state's efforts to advance some legitimate and compelling interest, then, as the Supreme Court has made clear, the asserted state interest must be weighed against the individual's interest. Presented with such a conflict, a court must undertake the delicate task of determining (a) *whether the state's purpose is sufficiently compelling, and (b) whether the manner chosen to achieve such a goal has been tailored with sufficient respect for those whose religiously grounded conduct may conflict with the state's purpose,* such that any resulting burden on religious conscience is warranted. *Gillette v. United States,* 401 U.S. 437, 461–62 [91 S.Ct. 828, 842, 28 L.Ed.2d 168] (1971); *Braunfield v. Brown,* supra, 366 U.S. at 603 [81 S.Ct. at 1146]; *Prince v. Massachusetts,* 321 U.S. 158, 166 [64 S.Ct. 438, 442, 88 L.Ed. 645] (1943); *Cantwell v. Connecticut,* 310 U.S. 296, 303–04 [60 S.Ct. 900, 903, 84 L.Ed. 1213] (1940) [parallel citations omitted].

*Africa,* 542 F.Supp. at 228 (emphasis added).

In *Africa v. Anderson, supra,* plaintiff sued a state criminal trial judge for damages and equitable relief, claiming that at her trial she had been deprived of her religious freedom by the judge's requirement that she be represented by a court-appointed counsel. During the course of her trial, the plaintiff had sought leave to represent herself, "strenuously insisting that the ten-

ets of her religion . . . prohibited representation by counsel and required instead that [she] represent [herself]." *Id.* at 225. The judge had refused such request, since he was "unable to establish that her decision was competent and fully informed." *Id.* at 226.

The *Africa* court granted the state judge's motion for summary judgment, finding that "in trials conducted by its courts, the state has a *legitimate and compelling interest* in ensuring that the accused's constitutional rights will be protected." *Id.* at 229 (emphasis added). The court concluded that the trial judge

> was entitled to conclude that allowing Ms. Africa to proceed without benefit of counsel posed such a significant risk of producing an unfair or inaccurate result that her religious convictions had to yield in the face of that danger.

*Id.* at 230.

The *Africa* case is but one example of a court determining that an individual's right to free exercise of religion is not unconstitutionally infringed by a judge's refusal to accommodate his or her religious beliefs or practices in the context of a judicial proceeding.

In *Smilow v. United States,* 465 F.2d 802 (2nd Cir.1972), *vacated and remanded on other grounds,* 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972), the Court of Appeals upheld the judgment of Edward Weinfeld, J., holding a witness in contempt of court for wilful refusal to obey the court's order to answer questions asked him by a grand jury. The recalcitrant witness asserted he was privileged from testifying by reason of the first amendment freedom of worship clause, claiming that as an "observant and committed Jew" he must refuse to answer or else suffer "divine punishment and ostracism from the Jewish Community" as an "informer". *Smilow,* 465 F.2d at 804.

The *Smilow* court assumed "arguendo that there is such a tenet of Jewish law and

that appellant devoutly embraces it," but nevertheless rejected the first amendment claim:

> "While courts must be sensitive to the rights of citizens to freely exercise their religious beliefs, *see Wisconsin v. Yoder,* 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) [parallel cites omitted], those rights are not absolute. In this case, the reasons for assuming that appellant has vital relevant information, in view of the state court indictment, are clear and no claim is made that these facts can conveniently be obtained from others. The penalty to be imposed is narrowly drawn to effectuate the goal of obtaining vital testimony. Appellant makes no claim that the grand jury investigation is designed to harass him or those holding his religious beliefs. On this record, therefore, we believe that appellant's first amendment claim is outweighed by the compelling state interest in having the grand jury hear 'every man's evidence' bearing on [the] alleged criminal activity . . . ."

*Id.* at 804–05.

Of significance to the instant case is a hypothetical offered by the *Smilow* court as an example of when a court must accommodate a person's religious beliefs or practices:

> If appellant had refused to appear before the grand jury on the ground that he had been summoned to testify on a Jewish Holy Day, the considerations would be different. . . . Recognition of appellant's right to follow his religious beliefs would not then completely nullify society's interest in a thorough investigation. A postponement for a day or two would provide a feasible and sensible accommodation of individual and societal interests.

*Id.* at 804.[2]

The issue of when the first amendment requires a court to accommodate a defendant's religious beliefs or practices has arisen in cases in which individuals have refused,

---

**2.** The Second Circuit followed the holding of *Smilow* in *United States v. Martin,* 525 F.2d 703, 710 n. 11 (1975), *cert. den.* 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975) (claim of

matter of conscience based on religious beliefs is not a valid ground for refusing to answer a grand jury's question).

on religious grounds, to rise in the courtroom upon the entrance or exit of the judge. The cases are split as to whether the interest served by the rising requirement is sufficiently compelling to overcome a claim that having to stand conflicts with one's religious beliefs. *See In re Chase,* 468 F.2d 128, 134 (7th Cir.1972) (contempt citation upheld over first amendment free exercise challenge); *Kaplan v. Hess,* 694 F.2d 847 (D.C.Cir.1982) (in *dicta,* casting doubt on whether judicial interest in standing requirement is sufficient to outweigh first amendment right). According to *Kaplan,* the ultimate issue in cases such as this is "whether the judiciary presents an 'interest of sufficient magnitude to override the interest claiming protection.'" *Id.* at 852 (quoting *Wisconsin v. Yoder,* 406 U.S. at 214, 92 S.Ct. at 1532).

Outside the judicial context, numerous cases have arisen in which individuals have made claims, based on the first amendment free exercise clause, that government-run institutions must make exceptions to usual rules or practices in order to accommodate their religious beliefs. In the recent case of *Thomas v. Board of Education,* 607 F.2d 1043 (2nd Cir.1979), *cert. den.* 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980), the Second Circuit offered the following principles for reconciling first amendment claims with the need to maintain institutional integrity:

> [W]e recognize that granting the fullest measure of individual freedom in every corner of the polity would, in certain settings, necessarily obstruct fulfillment of vital social functions. Accordingly, although soldiers and prisoners, for example, enjoy many First Amendment privileges, it is beyond cavil that their rights of expression may be curtailed in a manner that would be intolerable in the outside community.... Yet, even in these isolated archipelagos, the Constitution requires government authorities to permit

the maximum degree of unrestrained expression consistent with the maintenance of institutional integrity.

*Id.* at 1048–49. (*Thomas* dealt with the first amendment rights of school children.)

The accommodation of the religious practices of prisoners with the legitimate goals of prison administration has been a common source of litigation. In this context, the Second Circuit has set out the following standard:

> Where [institutional prison restrictions] operate on fundamental rights such as the freedom of worship, the degree of restriction must be only that which can be justified by an 'important or substantial government interest' in the restriction by the penal institution.

*Kahane v. Carlson,* 527 F.2d 492 (2nd Cir. 1975) (quoting *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)).[3] Pursuant to this standard, courts have recognized that prison authorities must accommodate the religious freedom rights of prisoners in various contexts. *See, e.g., Kahane,* 527 F.2d at 495 (upholding right of prisoners to receive diets consistent with their religious scruples); *Chapman v. Kleindienst,* 507 F.2d 1246, 1251 (7th Cir.1974) (same); *Moskowitz v. Wilkinson,* 432 F.Supp. 947 (D.Conn.1977) (prison no-beard rule is unconstitutional as applied to prisoners who decline to remove their beards on the basis of sincerely held religious beliefs).

*Applying the Law to the Instant Case*

*A. Sincerity of Religious Belief*

As a threshold issue, the court may inquire into the sincerity of Muhammed's religious scruple against attending a trial on Fridays. Thus, while it is "well established that the court may not inquire into the worthiness of [the defendant's] religious beliefs," *Kaplan v. Hess,* 694 F.2d 847 (D.C. Cir.1982), *see also United States v. Ballard,*

---

**3.** The *Kahane* court indicated that the "important or substantial government interest" standard applicable in cases involving prisoners is a less stringent standard than the "compelling government interest" standard that is presumably to be applied in other institutional settings. *Id.* at 495 n. 6. Thus, in deciding the instant case, this court makes clear that it is holding itself to a "compelling judicial interest" standard.

322 U.S. 78, 86–88, 64 S.Ct. 882, 886–87, 88 L.Ed. 1148 (1944), the court may consider whether the defendant's beliefs are " 'religious' in their 'own scheme of things' and whether their own beliefs are sincere." *Kaplan,* 694 F.2d at 851.

It should be noted, however, that courts are wary to engage in the delicate task of assessing the sincerity of an individual's religious beliefs, and therefore will often assume that such beliefs are sincere for the purpose of resolving the first amendment claim. *See e.g., Smilow v. United States,* 465 F.2d 802 (2nd Cir.1972), *vacated and remanded on other grounds,* 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972) (assuming "arguendo that . . . appellant devoutly embraces" the religious belief in question).

### B. *The Merits of the First Amendment Claim*

Assuming arguendo that defendant Muhammed devoutly embraces a belief that Fridays are a holy day, and that he therefore has a valid first amendment interest at stake, this court may nevertheless decide to hold the trial on Fridays if it decides (1) that the court has a "legitimate and compelling interest" in using Fridays as a trial day and (2) its use of Fridays as a trial day is the least restrictive alternative for reaching that interest. *See* case law cited in first portion of this memorandum.

Although a court may not have a compelling interest in using Fridays for trial days in a criminal case in which there are only a few co-defendants and the duration of which is expected to be brief, in the instant case the situation is far different. Here Muhammed is to be tried along with seven co-defendants in a case expected to last weeks, or perhaps months. The removal of one-fifth of the time available to try this case each week could add two weeks, or more, to the length of the trial.

In this setting, the court finds that there is a legitimate and compelling judicial interest—one based on both efficiency and fairness to all concerned—in using all available days of the week for trial of this case. This interest is to be protected on behalf of all of the defendants, the jurors who are to hear

and decide this case, as well as this court itself. The court also finds that there is no less restrictive alternative by which it can serve this interest and at the same time accommodate Muhammed's religious beliefs.

Therefore, although it is well aware of the sensitivity of this question and the importance of Muhammed's constitutional right to the free exercise of his religion, this court denies Muhammed's request that the trial not be held on Fridays.

SO ORDERED.