**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Larry A. TURNBULL, Defendant–Appellant.**

**No. 88–3148.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 7, 1989 *.

Decided Oct. 31, 1989.

Larry Turnbull, Fairbanks, Alaska, pro se.

Neil J. Evans, Asst. U.S. Atty., Anchorage, Alaska, for plaintiff-appellee.

Before ALDISERT,** WRIGHT and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Larry Turnbull appeals the district court's judgment of conviction against him

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

** The Honorable Ruggero J. Aldisert, United States Circuit Judge for the Third Circuit, sitting by designation.

for failure to pay income taxes. We affirm in part and vacate in part.

## I

The United States asserted its authority over Turnbull in matters temporal by charging him with failing to render unto Caesar that which was due, in willful violation of the Internal Revenue Code. 26 U.S.C. § 7201 (1982).

At Turnbull's initial appearance before the magistrate in Fairbanks, his arraignment was continued for a week. Turnbull then filed pleadings in the district court stating that he did not waive his right to counsel, but that his religious beliefs precluded him from using the services of any member of the bar. Turnbull stated his belief that the teachings of Jesus require him to avoid associating with lawyers. Turnbull requested that lay persons who shared his beliefs be appointed as his co-counsels. At his arraignment, Turnbull appeared without counsel and stood mute when asked to plead. The court entered a plea of not guilty on his behalf.

On March 16, Turnbull withdrew his motion asking for lay counsel. Magistrate Roberts held a hearing on March 29 regarding Turnbull's representation. Turnbull stated that he waived none of his rights, and contested the jurisdiction of the court. He repeated his religious objection to the services of a lawyer. The court examined him as to his level of understanding of the proceedings, and explained the advantages of trained counsel at some length. The court told Turnbull that it could not appoint lay counsel under the rules of the court. Since Turnbull declined to waive his right to counsel, but was unwilling to be represented by anyone the court could appoint, the magistrate appointed Federal Public Defender Michael Karnavas as Turnbull's "standby counsel," who would be available to Turnbull should he desire assistance, and who would be able to take over the defense should Turnbull be unable to continue it himself.

Between this decision and the trial date of May 3, 1988, Turnbull filed voluminous motions to dismiss, raising typical tax pro-testor arguments. All of these were denied. On May 3, Judge Fitzgerald inquired further into the counsel situation before allowing the trial to begin. Pursuant to Ninth Circuit law, the court was not willing to let Turnbull represent himself, even with standby counsel present, without a knowing and voluntary waiver of the right to counsel on the record. The court described the charges to Turnbull, again emphasizing the numerous benefits of the full assistance of counsel. Turnbull stated that he did not understand the charges, and again declined to waive his right to counsel. Judge Fitzgerald asked standby counsel Karnavas to sit at counsel table and conduct the defense.

No allegation is made that Karnavas was unprepared to conduct an adequate defense, or that he provided ineffective assistance. He did the best he could in the nightmarish position of representing a client who objected to his very presence on religious grounds, and refused to cooperate with him in any way. Karnavas cross-examined witnesses, made relevant objections, and made opening and closing statements. He did not put on any defense witnesses. The court offered numerous opportunities to Turnbull to participate in his own defense, but he refused each one because he said that Karnavas' presence prevented him from participating in the trial in any way.

The jury convicted Turnbull of all the charges, and he was sentenced to one year of imprisonment, probation, costs of prosecution, and special assessments. Turnbull timely appeals. Fed.R.Crim.P. 4(b). We have jurisdiction over this final judgment. 28 U.S.C. § 1291 (1982). We review the questions of law raised by this appeal de novo.

## II

Turnbull claims, *inter alia*, that the district court's appointment of Karnavas, and its failure to appoint lay counsel, violated his sixth amendment right to the effective assistance of counsel and his first amendment right to the free exercise of religion.

A. *Sixth Amendment*

A defendant has a constitutional right to represent himself. *E.g., Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562 (1975). This right, however, is not absolute. Our recognition of the powerful advantage of competent counsel mandates extreme care in allowing pro se representation. A waiver of the right to counsel must be knowing and voluntary. *Id.* at 835, 95 S.Ct. at 2541; *United States v. Balough,* 820 F.2d 1485, 1487 (9th Cir.1987). *Balough* sets forth the facts that the district court must establish on the record before it may accept a waiver. 820 F.2d at 1487–89. Here, Turnbull's statement that he did not understand the charges made a waiver impossible, even if he had in fact attempted one. *See United States v. Gillings,* 568 F.2d 1307, 1308–09 (9th Cir.) (per curiam), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978). If a defendant does not knowingly and voluntarily waive counsel, and does not retain acceptable counsel, the court must appoint counsel.

■ The district court therefore had no alternative to appointing counsel. The magistrate initially attempted something of a compromise by appointing Karnavas as standby counsel. Absent a knowing and voluntary waiver, the appointment of advisory counsel is not sufficient to meet sixth amendment requirements. *United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir. 1982). The elevation of Karnavas to full-fledged trial counsel before trial cured that error, however.

A district judge may allow "hybrid representation," in which the accused assumes some of the lawyer's functions, under certain circumstances. If the defendant assumes any of the "core functions" of the lawyer, however, the hybrid scheme is acceptable only if the defendant has voluntarily waived counsel. *Id; see also Locks v. Sumner,* 703 F.2d 403, 407–08 (9th Cir.) *cert. denied,* 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983). Here, there was no waiver. The case must be distinguished from *Kimmel,* however. In *Kimmel,* the defendant formulated and presented his

major defense himself. He represented himself without the necessary waiver. In this case, although Turnbull had the opportunity to participate, he did not. Karnavas presented the entire defense case at trial.

Turnbull suggests that the court should have appointed lay counsel. He argues that "counsel" does not necessarily mean "lawyer." Turnbull withdrew his motion asking for lay counsel, but did raise the issue orally before the magistrate. He did not ask Judge Fitzgerald for lay counsel. As the status of his request is unclear, we will dispose of the matter on the merits.

■ "Counsel" means "attorney". *United States v. Hoffman,* 733 F.2d 596, 599 (9th Cir.), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). There is no right to lay counsel. *United States v. Wright,* 568 F.2d 142, 143 (9th Cir.1978). The District of Alaska Rules of Court permit only licensed attorneys to be admitted to the district court bar. D.Alaska R.Ct. 3 (1988).

■ The district court did not violate the sixth amendment by appointing counsel to conduct the defense of a person who did not voluntarily and knowingly waive his right to an attorney.

B. *Free Exercise of Religion*

■ The federal courts may not improperly burden the free exercise of religion. To show a free exercise burden that is unconstitutional, however, a claimant must do more than merely show that the government action in some way affected his religion. *E.g., Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 108 S.Ct. 1319, 1325, 99 L.Ed.2d 534 (1988). Our interpretation of Supreme Court precedent is most succinctly set forth in *Graham v. Commissioner,* 822 F.2d 844, 850–51 (9th Cir.1987), *aff'd sub nom. Hernandez v. Commissioner,* —— U.S. ——, 109 S.Ct. 2136, 2148–49, 104 L.Ed.2d 766 (1989).

To show a free exercise violation, the religious adherent ... has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion by pressuring him or her to

commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. [Citations omitted]. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

*Id.*, 822 F.2d at 850–51.

Even assuming Turnbull meets this difficult test, to find a burden on the free exercise of religion to exist does not end the analysis. "[T]he government must accommodate the religious beliefs unless there is a compelling state objective for [the burdensome practice] in the particular case." *Id.* at 852. The Supreme Court and this circuit have found a variety of legitimate state objectives to be compelling interests that override free exercise claims. *E.g., Lyng,* 108 S.Ct. at 1324–27 (federal roadbuilding in Indians' sacred area upheld); *see also, Graham,* 822 F.2d at 852 (government interest in sound tax system).

The cases assessing free exercise challenges to court rules or practices are few, but helpful. In *Gordon v. Idaho,* the court held that the district court abused its discretion by dismissing an action because a plaintiff refused, in accordance with his religious beliefs, to swear an oath or make an affirmation. 778 F.2d 1397, 1399–1401 (9th Cir.1985). "The First Amendment's guarantee of the free exercise of religion requires that our procedural rules be interpreted flexibly to protect sincerely-held religious beliefs and practices." *Id.* at 1400. The district court was required on remand to seek a less burdensome means of assuring truthfulness. *Id.* at 1401.

A district court in Michigan likewise found Fed.R.Crim.P. 23(a)'s requirement that the government approve a defendant's waiver of a jury trial unacceptably to burden the free exercise rights of defendants who sincerely believed that they could submit only to the judgments of "judges chosen from among the most learned of the community," and not to those of lay jurors. *United States v. Lewis,* 638 F.Supp. 573, 575 (W.D.Mich.1986). The court conceded

the government's compelling interest in the fairness and impartiality of the adversary system, and the special role of the jury trial in our system, but found a bench trial to be a reasonable accommodation of the defendant's beliefs. *Id.* at 578–81.

The case that is most persuasive comes from the Eastern District of Pennsylvania. *Africa v. Anderson,* 542 F.Supp. 224 (E.D. Pa.1982). In *Africa,* the court had to decide what must be done to ensure adequate representation of a defendant who rejects the legal system entirely. Consuewella Africa was a member of the MOVE organization. She was tried on various charges in state court arising out of the confrontation between MOVE and the city of Philadelphia. Africa wished to proceed pro se. The court's *Faretta* inquiry showed her to be disruptive, contemptuous, and entirely unable to represent herself adequately. *Id.* at 226–27. The court appointed counsel.

Africa sued in federal court, contending that the state court's actions had unconstitutionally burdened the free exercise of her religion. Africa sincerely believed that the teachings of John Africa required her to represent herself. *Id.* at 225. The court discussed the conflict between the first and sixth amendments. *Id.* at 228–30. After weighing the respective interests, it found the state's interest in the protection of the constitutional rights of the accused to outweigh Africa's free exercise claim:

In my view, because of her complete denial of the need to follow court procedures, no court would be able to accommodate fully Ms. Africa's religious principles short of abandoning altogether its responsibility to examine the basis of her decisions to waive her right to counsel and to represent herself. To be sure, courts must be sensitive to the rights of individuals to exercise freely their religious principles. But the protections afforded by the First Amendment are not so broad as to allow Ms. Africa to nullify the procedures ... mandated by other provisions of the Constitution which ensure that trials are conducted fairly.... [A]llowing Ms. Africa to proceed without

benefit of counsel posed such a significant risk of producing an unfair or inaccurate result that her religious convictions had to yield in the face of that danger.

*Id.* at 230.

Turnbull's refusal to waive counsel, coupled with his apparent religious aversion to counsel, put the court in a more difficult position than did Africa's simpler demand for self-representation. The court did all it could do under the circumstances to ensure a fair trial. We hold that the state's compelling interest in a fair and orderly trial outweighs Turnbull's objection to counsel.

### III

Turnbull contests the jurisdiction of the court. He violates Fed.R.App.P. 28(a)(4) by relying on his pleadings filed in the district court. *United States v. Loya,* 807 F.2d 1483, 1486–87 (9th Cir.1987). By failing to argue these points in his brief, he waives them, unless manifest injustice will result. *Id.* There is no manifest injustice. All of Turnbull's tax protestor arguments were thoroughly considered and correctly rejected in the magistrate's ruling on pretrial motions.

### IV

This court has held the special assessments mandated by 18 U.S.C. § 3013 to be unconstitutional. *United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988), *cert. granted,* — U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989). We therefore vacate the special assessments against Turnbull. *United States v. Anguiano,* 873 F.2d 1314, 1321 (9th Cir.1989).

### CONCLUSION

Turnbull's sixth amendment rights were not violated. His right to the free exercise of his religion was burdened, but the burden was excused by a compelling state

interest. The conviction is affirmed, but the special assessments are vacated.

AFFIRMED in part, VACATED in part.