**UNITED STATES of America, Plaintiff,**

**v.**

**William Alexander LEWIS, a/k/a My Lord Prophet; William A. Lewis, a/k/a Prophet David Israel; William Lenard Lewis, a/k/a Judah Israel; Muriel S. King, a/k/a Prophetess Leah Israel; Robert A. Mc Gee, a/k/a Ezekiel Israel; Larry E. Branson, a/k/a Jabez Israel; Theodore R. Jones, Sr., a/k/a Jacob Israel; Eddie L. Green, a/k/a Samson Israel; and James Nelson, a/k/a Methusalem Israel, Defendants.**

**No. G85–133 CR.**

United States District Court,
W.D. Michigan, S.D.

May 28, 1986.

John A. Smietanka, U.S. Atty., Daniel L. Bell II, Susan J. King, Criminal Section—Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Larry C. Willey, Grand Rapids, Mich., for William Alexander Lewis.

Dennis Kolenda, Grand Rapids, Mich., for William Lenard Lewis.

Michael B. Quinn, Grand Rapids, Mich., for Muriel S. King.

Leroy Kramer, Grand Rapids, Mich., for Robert A. McGee.

Charles S. Rominger, Jr., Grand Rapids, Mich., for Larry E. Branson.

Anthony J. Valentine, Grand Rapids, Mich., for Theodore R. Jones, Sr.

Robert Mirque, Grand Rapids, Mich., for Eddie L. Green.

Victor Smedstad, Grand Rapids, Mich., for James Nelson.

## OPINION

HILLMAN, Chief Judge.

On November 21, 1985, a federal grand jury indicted William A. Lewis, William L. Lewis, Muriel S. King, Robert A. McGee, Larry Branson, Theodore R. Jones, Eddie L. Green, Jr., and James Nelson. The two count indictment charged that from the fall of 1981 until July 4, 1983, defendants conspired to hold named and unnamed children in involuntary servitude in violation of 18 U.S.C. § 241 and held John Yarbough in involuntary servitude in violation of 18 U.S.C. §§ 2, 1584.[1] Those events allegedly occurred at a residential camp, commonly referred to as the "House of Judah" camp, near Grand Junction in Allegan County, Michigan.

Currently before the court is the defendants' motion to "strike the government's jury demand." More precisely stated, defendants[2] move to override the government's refusal to consent to their waiver of trial by jury, pursuant to Fed.R.Crim.P. 23(a). Defendants assert that Fed.R. Crim.P. 23(a) infringes their free exercise

of religion as guaranteed under the First Amendment to the Constitution by allowing the government to veto their waiver of a jury trial. Specifically, defendants maintain that their religious beliefs forbid them from submitting to the judgment of lay jurors. Defendants base this belief on a literal interpretation of the Bible, particularly the Pentateuch. The Bible, according to defendants, teaches that God has ordained judges chosen from among the most learned of the community to resolve disputes between people and to pass judgment on individuals. Accordingly, under defendants' version of God's will, defendants can only submit themselves to judgment by judges.

## DISCUSSION

A. *The Waiver of Trial by Jury in Federal Criminal Cases.*

Article III, section 2 of the Constitution and the Sixth Amendment to the Constitution guarantee a defendant in a federal criminal case the right to trial by jury. *See Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968) (applying the right to trial by jury guaranteed by the Sixth Amendment to the States through the Fourteenth Amendment). The right to a jury trial in criminal cases is of such importance to our constitutional system that through the first 150 years of our Republic federal courts held that the Constitution prohibited a defendant from waiving a jury trial. *E.g., Schick v. United States,* 195 U.S. 65, 95, 24 S.Ct. 826, 837, 49 L.Ed. 99 (Harlan, J., dissenting); *Blair v. United States,* 241 F. 217, 230 (9th Cir. 1917). Finally, in *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), the Court found that a defendant in a criminal case could waive trial by jury.

---

1. Defendant Muriel S. King is only charged under Count I of the indictment, which charges defendants with violation of 18 U.S.C. § 241.

2. Defendant James Nelson does not move to waive a trial by jury without the government's consent. Although defendant Nelson originally

joined the other defendants in this motion, his counsel has advised the court that defendant Nelson does not have a religious belief against submitting to the judgment of lay jurors and, consequently, does not wish to join in this motion.

The Federal Rules of Criminal Procedure now explicitly allow for a defendant's waiver of trial by jury in a criminal case. Specifically, Fed.R.Crim.P. 23(a) provides the following.

> "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

Under Fed.R.Crim.P. 23(a), a defendant in a criminal case may waive his constitutional right to trial by jury if his waiver is (1) voluntary, knowing, and intelligent; (2) in writing; (3) with the approval of the court; and (4) with the consent of the government. *United States v. Martin,* 704 F.2d 267, 271 (6th Cir.1983). The Supreme Court in *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), considered a constitutional challenge to the requirement of Fed.R.Crim.P. 23(a) that the government must consent to a defendant's waiver of trial by jury.

In *Singer* the defendant claimed that to compel him to undergo a jury trial against his will was contrary to his rights to a fair trial and due process. In other words, the defendant claimed that the Fifth and Sixth Amendments to the Constitution[3] guarantee him the right to a bench trial; consequently, Fed.R.Crim.P. 23(a) was unconstitutional because it allowed the government to insist upon a trial by jury despite the defendant's waiver. The Court rejected the defendant's argument and held that a defendant in a criminal case does not have a constitutional right to insist on a bench trial. *Singer,* 380 U.S. at 26, 37, 85 S.Ct. at 785, 791.

The Court in *Singer,* however, limited the scope of its holding in the following manner.

> "We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial. Petitioner argues that there might arise situations where 'passion, prejudice ... public feeling' or some other factor may render impossible or unlikely an impartial trial by jury. However, since petitioner gave no reason for wanting to forgo jury trial other than to save time, this is not a case, and petitioner does not claim that it is."

*Singer,* 380 U.S. at 37–38, 85 S.Ct. at 791. Generally, federal courts have been reluctant to find that a defendant's right to a fair trial required a bench trial. *See, e.g., United States v. Wright,* 491 F.2d 942, 945 (6th Cir.1974). Nonetheless, a few courts have found potential juror prejudice so pervasive or the issues so complicated that the due process clause required a bench trial. *See United States v. Braunstein,* 474 F.Supp. 1 (D.N.J.1979); *United States v. Panteleakis,* 422 F.Supp. 247 (D.R.I.1976); *United States v. Schipani,* 44 F.R.D. 461 (E.D.N.Y.1968). The court and the parties, however, have found no cases involving a First Amendment claim against the operation of Fed.R.Crim.P. 23(a) as raised by defendants here.

B. *A First Amendment Challenge to Fed.R.Crim.P. 23(a).*

In this case, defendants contend that Fed.R.Crim.P. 23(a) violates their right to free exercise of religion as guaranteed by the First Amendment to the Constitution. Specifically, defendants assert that the government's veto power over their waiver of a jury trial infringes their religious belief against submitting to judgment by lay jurors. Therefore, defendants conclude that the requirement of Fed.R.Crim.P. 23(a) that the government first consent to the defendants' waiver of a jury trial violates the First Amendment under the circumstances of this case.

■ (1) *First Amendment Standards*— The First Amendment to the Constitution provides in part that "Congress shall make no law respecting an establish-

---

**3.** The defendant in *Singer* also based his constitutional challenge to Fed.R.Crim.P. 23(a) on the Ninth and Tenth Amendments to the Constitution. *Singer,* 380 U.S. at 26, 85 S.Ct. at 785.

ment of religion, or prohibiting the free exercise thereof." The religion clauses of the First Amendment undeniably occupy a central place in our constitutional framework. *See Braunfeld v. Brown,* 366 U.S. 599, 612, 81 S.Ct. 1144, 1150, 6 L.Ed.2d 563 (Brennan, J., concurring in part and dissenting in part). To balance individual religious liberties with majoritarian interests as expressed by governmental action, federal courts have employed the following analysis in considering claims that a statute or governmental action violates an individual's right to free exercise of religion.[4] First, a court must evaluate whether the individual's belief is (1) sincerely held and (2) a religious belief rather than a strictly philosophical and personal belief. *See Thomas,* 450 U.S. at 715–16, 101 S.Ct. at 1430–31; *Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). Second, a court must determine whether the state action interferes with or burdens the individual's religious belief. Third, if the state action interferes with a religious belief, then a court must determine whether compelling state interests exist to justify such interference. Inherent in this search for a compelling state interest is the determination "whether accommodation by the [government] would 'unduly interfere with fulfillment of the governmental interest,' and whether the governmental regulation is the 'least restrictive means' of promoting the governmental interest." *Dayton Christian Schools v. Ohio Civil Rights Commission,* 766 F.2d 932, 946–47 (6th Cir.1985) (quoting from *United States v. Lee,* 455 U.S. 252, 259, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982), and *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981)). With this analytical framework in mind, I shall now review and evaluate defendants' contention that the government's veto of their waiver of trial by jury

violates their right to free exercise of religion.

■ *Application of First Amendment Standards—* In considering defendants' motion at this time, I shall assume that defendants have a sincerely held religious belief that God forbids them from submitting to judgment by lay jurors. I make this assumption in order to conserve judicial resources and the parties' time and expense. Accordingly, this court should, as the parties recommend, first determine the legal issues raised by defendants' motion before holding the required evidentiary hearing.

■ Defendants must initially show as a threshhold requirement that Fed.R.Crim.P. 23(a) burdens or interferes with their religious belief against submitting to the judgment of lay jurors. *Dayton Christian Schools,* 766 F.2d at 946. Fed.R.Crim.P. 23(a) is clearly neutral on its face; it makes no reference to religious beliefs or practices. Nonetheless, "[a] regulation neutral on its face may, in its application, ... offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Wisconsin v. Yoder,* 406 U.S. at 220, 92 S.Ct. at 1535. Therefore, this court must search beyond the face of Fed.R.Crim.P. 23(a) in evaluating whether the rule unduly burdens defendants' religious belief.

■ The government argues that no undue burden on an individual's religious belief arises unless "a benefit, right or privilege is taken away if the religious belief is practiced, or a penalty is imposed if the religious belief is exercised." Applying such criteria to this case, the government concludes that "a jury trial places no burden upon the free exercise of defendants' religious beliefs." Although I generally agree with the government's version of the relevant criteria for considering whether an undue burden exists, I disagree with the government's conclusion that Fed.R.

---

**4.** Both parties agree that the following analytical framework applies to claims that court rules instead of statutes violate an individual's free exercise of religion. *See Africa v. Anderson,* 510 F.Supp. 28, 32 (E.D.Pa.1981); *In re Palmer,* 386 A.2d 1112 (R.I.1978). *Cf. Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Crim.P. 23(a) does not impose an undue burden upon these defendants' free exercise of religion.

Statutes or regulations which unduly interfere with an individual's religious belief generally present the individual with a "hard choice." *See Thomas,* 450 U.S. at 717, 101 S.Ct. at 1431; *Sherbert,* 374 U.S. at 417, 83 S.Ct. at 1801 (Stewart, J., concurring). For example, in *Wisconsin v. Yoder,* the state law forced the Amish parents to choose between their religious belief against secondary, secular education for their children or criminal sanction. In *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963), the state law, as interpreted by the state Supreme Court, compelled the individual "to choose between following the precepts of her religion and forfeiting [unemployment compensation] benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." The Court in *Sherbert,* therefore, concluded that "[g]overnmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [an individual] for her Sunday worship." *Id.* In short, as the Court of Appeals for the Sixth Circuit has recently explained, "[t]he hallmark of a free exercise violation is the presence of coercion by the state." *Dayton Christian Schools,* 766 F.2d at 949.

■ Although not readily apparent, Fed.R.Crim.P. 23(a) coerces defendants to make such a "hard choice." Here, the government's refusal to consent to defendants' waiver of a jury trial requires defendants to choose between submitting to a jury trial or, on the other hand, following their religious belief and either pleading guilty or refusing to participate in a jury trial. In other words, if defendants wish to remain true to their religious belief, then they must admit their guilt and thereby avoid a jury trial or they must refuse to participate

in the trial and thereby risk further criminal sanction. Fed.R.Crim.P. 23(a), therefore, effectively impedes defendants' observance of their religious belief that God has ordained judges chosen from among the most learned of the community to resolve disputes between people. Consequently, Fed.R.Crim.P. 23(a) operates to burden unduly defendants' free exercise of religion.

■ Nevertheless, as the Supreme Court has often said: "Not all burdens on religion are unconstitutional." *United States v. Lee,* 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982). The government may burden defendants' religious belief if such burden is essential to achieve an overriding or compelling governmental interest.[5] *Id.* 455 U.S. at 257–58, 102 S.Ct. at 1055; *Dayton Christian Schools,* 766 F.2d at 952–53. A burden is *essential* to achieve a compelling governmental interest if accommodation of defendants' religious belief would significantly interfere with attainment of the compelling governmental interest. *See Dayton Christian Schools,* 766 F.2d at 954–55. After carefully considering the parties' well written briefs and listening to their oral arguments, I find that the burden on defendants' religious belief is not essential to achieve a compelling governmental interest.

■ The government asserts two related compelling interests to justify the burden which Fed.R.Crim.P. 23(a) imposes upon these defendants. First, the government contends that the principle "compelling interest [served by Fed.R.Crim.P. 23(a)] in this case is the fairness and impartiality of our adversary system and indeed, the appearance of fairness and impartiality." In its brief in opposition to defendants' motion, the government explains that "[i]n such a case of unusual community interest, a verdict should bear the imprimateur of

---

**5.** In addition, the government may burden or restrict conduct that poses some substantial threat to public safety, peace, or order, even though an individual's religious beliefs prompt such conduct. *Sherbert v. Verner,* 374 U.S. at 403, 83 S.Ct. at 1793. The government does not suggest that defendants' religious belief presents conduct which poses a threat to public safety, peace, or order.

the community—that is, the decision of the jury. In accordance with the traditions of our legal system, it is important to demonstrate both the fact and the appearance of community participation in the courts." Undoubtedly, the governmental interest in a fair and impartial judicial system, in practice and in appearance, is compelling. Furthermore, the government, as a litigant, possesses a compelling interest in a full, fair, and public trial. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 382–83, 382 n. 11, 99 S.Ct. 2898, 2907, n. 11 61 L.Ed.2d 608 (1979); *Patton v. United States*, 281 U.S. at 294, 50 S.Ct. at 256 (quoting from *Dickinson v. United States*, 159 F. 801). The government, however, can accommodate defendants' religious belief and still achieve its goal of ensuring a fair and impartial trial in practice and in appearance.

Although "[t]rial by jury has been established by the Constitution as the 'normal and ... preferable mode of disposing of issues of fact in criminal cases,' " *Singer*, 380 U.S. at 35, 85 S.Ct. at 790 (quoting from *Patton*, 281 U.S. at 312, 50 S.Ct. at 263), trial by jury is not essential to the procurement of a fair and impartial trial in practice and in appearance. Several factors support this conclusion. First, the practice of many states attests to the conclusion that the government's absolute veto over a defendant's waiver of trial by jury is not essential for a fair and impartial trial. For instance, in Michigan a criminal defendant may waive trial by jury without the consent of prosecuting attorneys. M.C. L.A. §§ 763.3, 768.8. *See also Singer*, 380 U.S. at 36–37, 85 S.Ct. at 790–91 (listing various state practices regarding the waiver of jury trials). Second, the Supreme Court's long hesitance to apply the Sixth Amendment's right to trial by jury to the states through the Fourteenth Amendment belies the suggestion that a jury trial is essential to ensure a fair and impartial trial in practice and appearance. As Justice Harlan, in dissent, wrote in *Duncan v. Louisiana*, 391 U.S. 145, 188, 88 S.Ct. 1444, 1469, 20 L.Ed.2d 491 (1968):

"It can hardly be gainsaid, however, that the principal original virtue of the jury trial—the limitations a jury imposes on a tyrannous judiciary—has largely disappeared. We no longer live in a medieval or colonial society. Judges enforce laws enacted by democratic decision, not by regal fiat. They are elected by the people or appointed by the people's elected officials, and are responsible not to a distant monarch alone but to reviewing courts, including this one."

Our society has long recognized that bench trials provide a fair and impartial mechanism for adjudication of criminal prosecutions. *See Adams v. United States*, 317 U.S. 269, 279–80, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942). Consequently, the government can accommodate defendants' religious belief in this case by allowing a bench trial without significant (if any) interference with its interests in a fair and impartial trial.

In the preceding discussion, I do not wish to suggest that the government has withheld its consent to defendants' waiver on the basis of impermissible or unethical considerations. Further, I do not wish to imply that Congress should have adopted some commentators' suggestion that Fed. R.Crim.P. 23(a) should not allow the government to veto a defendant's waiver of trial by jury. *See* L. Orfield, Criminal Procedure under the Federal Rules, § 23.36 (1966). Instead, the preceding discussion merely demonstrates that a bench trial would satisfy the government's interest in a fair and impartial trial without infringing these defendants' religious liberty. I reach this conclusion with an eye to Justice Frankfurter's admonition that "in safeguarding conscience we are dealing with interests so subtle and so dear, every possible leeway should be given to the claims of religious faith." *Minersville District v. Gobitis*, 310 U.S. 586, 594, 60 S.Ct. 1010, 1012, 84 L.Ed. 1375 (1940).

At oral argument the government presented a second compelling interest to justify burdening defendants' free exercise of religion. The government suggests that

the government's veto over defendants' waiver of trial by jury serves a compelling governmental interest by guaranteeing community input into criminal verdicts. The government argues that its interest in community input into criminal verdicts is especially compelling in this case when issues of family rights, protection of children, and alleged slavery charges are involved.

■ A jury trial is the most just form of adjudication in criminal prosecutions. *See Duncan*, 391 U.S. at 156, 88 S.Ct. at 1451. Jury trials have historically served to vent community pressures and passions. As the lid of a tea kettle releases steam, jury trials in criminal cases allow peaceful expression of community outrage at arbitrary government or vicious criminal acts. Accordingly, "the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as the most likely to produce a fair result"—a jury. *Singer*, 380 U.S. at 36, 85 S.Ct. at 790. Although a legitimate and important governmental interest, I do not find community input through a jury trial to be an overriding or compelling governmental interest sufficient to justify burdening defendants' religious freedom.

The Sixth Amendment guarantees the right to trial by jury solely for the benefit of the accused and not for the benefit of the government or the community. *Gannett Co. v. DePasquale*, 443 U.S. 368, 379–80, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608 (1979). This follows directly from the purpose of the constitutional right to trial by jury, which "is granted to criminal defendants in order to prevent oppression by the Government." *Duncan*, 391 U.S. at 155, 88 S.Ct. at 1450. Therefore, the government's interest in community input into criminal verdicts through jury trials does not arise from the Constitution. Accordingly, the government's interest in community input through jury trials, valuable as that may be, is of a lesser magnitude than its interest in fair and impartial trials, which the Constitution compels the government to secure. *See Dayton Christian Schools*, 766 F.2d at 954. Furthermore, Fed.R.Crim.P. 23(a) itself demonstrates that the governmental interest in community input through jury trials fails to arise to the level of a compelling or overriding interest. Under Fed.R.Crim.P. 23(a), government attorneys may without explanation "remove" community input from criminal verdicts by consenting to a defendant's waiver of jury trial. If the government's interest in community input into criminal verdicts were of such overriding concern, then it is unlikely that government attorneys would possess such unreviewed, discretionary authority.

Finally, even if the government's interest in community input into criminal verdicts amounts to a compelling interest, the government can accommodate defendants' religious belief without completely forsaking community input into the verdict. Although definitely not as well suited to the task as twelve jurors, an impartial judge as a member of the community inevitably brings community input into criminal verdicts. *See* B. Cardozo, *The Nature of the Judicial Process*, at 167–77 (1921). Consequently, the government's interest in community input into criminal verdicts is not one of "those interests of the highest order and those not otherwise served [which] can overbalance [defendants'] legitimate claims to the free exercise of religion." *Wisconsin v. Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533.

(3) *Policy Considerations Against Creation of a First Amendment Exception to Fed.R.Crim.P. 23(a)*—As its final argument against defendants' motion, the government suggests that a free exercise of religion exception to its power under Fed.R.Crim.P. 23(a) to veto a defendant's waiver of jury trial will encourage criminal defendants to assert such a religious belief exception to Fed.R.Crim.P. 23(a) and, consequently, burden already overworked federal courts. The government's policy argument fails for several reasons.

First, an individual's assertion of his constitutional right to free exercise of religion nearly always threatens governmental efficiency and customary governmental practices. In fact, all legal disputes involving claims under the free exercise clause of the First Amendment presuppose a conflict between individual religious freedom and governmental interests in uniform state regulation.[6] Therefore, the protection of individual religious liberty often lessens governmental efficiency and creates added burdens for a democratic government. Such is the task of an independent judiciary. Second, federal courts have frequently recognized individuals' free exercise of religious claims despite the possibility that such recognition would prompt a flood of similar claims. *E.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (allowing a religious exception to compulsory state education); *In re Jenison*, 375 U.S. 14, 84 S.Ct. 63, 11 L.Ed.2d 39 (1963), *on remand*, 267 Minn. 136, 125 N.W.2d 588 (1963) (allowing a religious exemption from jury service). Third, a religious belief exception to Fed.R. Crim.P. 23(a) is more narrow and better defined than the exception to Fed.R. Crim.P. 23(a) announced in *Singer*. The requirement that a defendant show the sincerity and religious nature of his belief against submitting to the judgment of a jury, as the defendants in this case must still show, will allow federal courts to closely limit a religious belief exception to Fed. R.Crim.P. 23(a). Finally, during my tenure as a district court judge, few defendants have sought to waive a jury trial. I do not expect that recognition of a religious belief exception to Fed.R.Crim.P. 23(a) will encourage many defendants to alter their strategy and seek a bench trial.

## CONCLUSION

Assuming that defendants can show a sincerely held religious belief against submitting to a jury trial, the defendants can waive a jury trial without the government's consent. Fed.R.Crim.P. 23(a) operates to burden unduly defendants' religious belief. The government can easily accommodate defendants' religious belief with its compelling interest in a fair and impartial trial. Further, the government's interest in community input into criminal verdicts is not a compelling interest sufficient to justify burdening defendants' religious liberty. Therefore, the free exercise clause of the First Amendment to the Constitution allows defendants to waive a jury trial, as their religious belief dictates, without the consent of the government as Fed. R.Crim.P. 23(a) prescribes.[7]

Consequently, defendants' motion to "strike the government's jury demand" and to waive a jury trial on the basis of their free exercise of religion is granted. Accordingly, upon defendants adequate showing that they sincerely hold a religious belief against submitting to a jury trial,[8] the prosecution against William A. Lewis, William L. Lewis, Muriel S. King, Robert A. McGee, Larry Branson, Theodore R. Jones, and Eddie L. Green, Jr. shall be tried without a jury.

**6.** The most egregious threats to religious liberty do not involve a conflict between individual religious freedom and governmental interests in *uniform* state regulation. For example, a free exercise of religion claim concerning a state law which expressly restricted a particular religious belief would not involve such a conflict.

**7.** Although unmentioned by the parties, I note that the establishment clause of the First Amendment does not prevent recognition of defendants' free exercise clause challenge to Fed.

R.Crim.P. 23(a). *See Thomas,* 450 U.S. at 719–20, 101 S.Ct. at 1432–33.

**8.** In addition to the requirement that defendants show the sincerity and religious nature of their belief before this case proceeds to trial without a jury, defendants must provide written waivers of their right to a jury trial and must establish that their waivers are voluntary, knowing, and intelligent. *See United States v. Martin,* 704 F.2d 267, 271–73 (6th Cir.1983).