Joshua LEWIS, Nashelia Avant, and
Marilyn Owens, Appellants–
Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0808–CR–757.

Court of Appeals of Indiana.

Aug. 12, 2009.

Transfer Denied Oct. 29, 2009.

Anna E. Onaitis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

In this consolidated interlocutory appeal, Appellants–Defendants Joshua Lewis, Nashelia Avant, and Marilyn Owens challenge the trial court's denial of their petitions to transfer their cases out of Marion Superior Court 8 on the grounds that the State's refusal to waive jury trials in Court 8 violates both the federal and Indiana Constitutions. We affirm.

## FACTS AND PROCEDURAL HISTORY

In Marion County, Class D felony cases involving defendants with mental health problems or diagnoses are often transferred to Court 8, which is otherwise primarily a misdemeanor court. According to Matthew Gerber, Class D Felony Division Leader for the Marion County Public Defender Agency, prior to June 14, 2007, the State routinely agreed to waive its right to a jury trial in Class D felony cases in Court 8. On the afternoon of June 14, 2007, however, the trial court reportedly held a series of bench trials and acquitted multiple defendants. Thereafter, according to Gerber, the State refused to waive jury trials for Class D felony cases in Court 8, including in the Lewis, Avant, and Owens cases addressed below. The State's waiver policy in Court 8 allegedly differed from its policy in other courts including Marion Superior Courts 9, 15, 18, and 24, where, according to Gerber, it routinely waived jury trials for cases involving crimes such as residential entry and theft.

### Joshua Lewis—Cause No. 49F15–0610–DF–207800

On October 26, 2006, the State charged Lewis in Marion Superior Court 15 with two counts of welfare fraud and two counts of theft, all Class D felonies. Lewis has manic depressive bipolar disorder. On March 8, 2007, the case was transferred out of Court 15 and into Court 8. On October 11, 2007, Lewis requested a bench trial. The State responded by refusing to waive its right to a jury trial. On October 31, 2007, Lewis filed a motion for a change of judge, and on January 16, 2008, a supplemental petition to transfer challenging the State's refusal to waive a jury trial on due process and equal protection grounds.

### Joshua Lewis—Cause No. 49F08–0712–FD–280888

On December 31, 2007, the State charged Lewis with Class D felony theft. On January 3, 2008, the case was transferred from Court 15 into Court 8. On January 17, 2008, Lewis requested a bench trial, but the State refused to waive its right to a jury trial. On February 28, 2008, Lewis filed a supplemental petition to transfer his case out of Court 8 challenging the State's refusal to waive a jury trial on due process and equal protection grounds.

### Nashelia Avant—Cause No. 49F08–0702–FD–023947

On February 9, 2007, the State charged Avant with Class D felony trespass. Avant suffers from paranoid schizophrenia, and bipolar and psychotic disorders. On April 16, 2007, the case was transferred from Court 15 to Court 8. On November 29, 2007, Avant requested a bench trial, but the State apparently refused to waive its right to a jury trial. On February 27, 2008, Avant filed a supplemental petition to transfer her case out of Court 8 challenging the State's refusal to waive a jury trial on due process and equal protection grounds.

### Marilyn Owens—Cause No. 49F08–0705–FD–095186

On May 30, 2007, the State charged Owens with Class D felony criminal recklessness and Class A misdemeanor battery. Owens receives treatment from

Midtown Mental Health Center. On July 16, 2007, Owens's case was transferred from Marion Superior Court 18 to Court 8. On October 11, 2007, Owens requested a bench trial, but the State refused to waive its right to a jury trial. On January 16, 2008, Owens filed a supplemental petition to transfer her case out of Court 8 challenging the State's refusal to waive a jury trial on due process and equal protection grounds.

### Lewis, Avant, and Owens

On April 30, 2008, the trial court held a hearing on Lewis's, Avant's, and Owens's petitions to transfer. At the hearing, along with Gerber's testimony regarding the State's refusal to waive jury trials, defense counsel introduced as Defendant's Exhibit A a transcript of a pretrial conference held in Court 8 on a separate matter in which the deputy prosecutor indicated, based upon her office policy, that she would not waive jury trials in Court 8 on Class D felony cases.

Following the hearing and the parties' submissions of proposed findings and conclusions,[1] the trial court issued orders denying each of Lewis's, Avant's and Owens's petitions for transfer. Lewis, Avant, and Owens petitioned the court to certify its orders for interlocutory appeal, which the trial court granted. The parties subsequently petitioned this court to accept jurisdiction and to consolidate their interlocutory appeals, which this court granted on September 29, 2008.[2] This appeal follows.

### DISCUSSION AND DECISION

The Appellants claim that the Marion County Prosecutor's Office's alleged policy to refuse to waive jury trials for Class D felonies in Court 8 deprives them of certain constitutional protections.

### I. Timeliness

■ The State first responds by claiming that the Appellants' claims, which it frames as Indiana Criminal Rule 12(B) motions for change of judge, were properly denied as untimely under Rule 12(B). Criminal Rule 12(B) allows for a change of judge in criminal cases due to bias or prejudice. Criminal Rule 12(D)(1) and (2) provide that requests for a change of judge must be made within a specified time period, and that certain requirements must be met in seeking a change of judge outside this specified time period. The Appellants do not dispute that their petitions for transfer in the instant cases did not comport with the requirements governing motions for change of judge under Criminal Rule 12. The Appellants argue, however, that the instant appeal is based upon petitions for transfer due to the State's allegedly unfair policy rather than Rule 12(B) motions for change of judge due to alleged bias. We acknowledge, as the State points out, that Lewis initially framed his challenge in Cause No. 207800 as a Rule 12(B) verified motion for change of judge alleging "bias or prejudice of Court 8." Lewis App. p. 135. Nevertheless, the challenges at issue here, including Lewis's challenge in Cause No. 207800, were ultimately framed as "petition[s] for transfer and all other just and equitable relief" and were rooted in allegedly unfair practices by the

---

1. It does not appear that Owens filed proposed findings and conclusions.

2. According to Appellants' counsel, Owens unfortunately passed away after this court accepted jurisdiction over her case. We need not dismiss her claim as moot, however, because it is identical to Lewis's and Avant's claims and represents a matter of public policy capable of repetition. *See Horseman v. Keller*, 841 N.E.2d 164, 170 (Ind.2006) (observing that where matters are of great public importance and the possibility of repetition exists, Indiana courts may choose to adjudicate an otherwise moot claim).

prosecutor's office rather than alleged bias by the judge. We are therefore unpersuaded that the trial court's denial of the Appellants' petitions must be affirmed on the grounds that they failed to comport with the timing requirements under Rule 12(B).[3]

## II.  Effective Assistance of Counsel

■  The Appellants first contend that the State's refusal to waive jury trials compromises defense counsel's effectiveness by preventing counsel from making a meaningful strategic decision regarding whether to pursue a jury trial or a bench trial. The Sixth Amendment to the United States Constitution, which is made obligatory upon the states by the Fourteenth Amendment, guarantees to each criminal defendant the right to have the "Assistance of Counsel for his defence." *See Bassett v. State*, 895 N.E.2d 1201, 1205–06 (Ind.2008). Similarly, Article I, Section 13 of the Indiana Constitution provides that in "all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel." IND. CONST. art I, § 13(a). Implicit in the right to counsel is the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Strong v. State*, 538 N.E.2d 924, 925 (Ind.1989).

In challenging the State's alleged policy and its effect upon counsel's ability to render effective assistance, the Appellants contend that they are left with the same sort of "hard choice" that the federal district court in *U.S. v. Lewis*, 638 F.Supp. 573, 578 (W.D.Mich.1986), concluded was unconstitutional in a case also involving the government's refusal to consent to waiver of a jury trial. In *Lewis*, the defendants' religious beliefs forbade them from submitting to the judgment of lay jurors.[4] *Id.* at 575. Yet the government refused to consent to their waiver of trial by jury pursuant to Federal Rule of Criminal Procedure 23(a), which provided that cases were to be tried by a jury unless the defendant waived the jury trial in writing and the government consented. *Id.* at 575–76. Following the defendants' claim that Rule 23(a) violated their First Amendment right to free exercise of religion, the district court agreed, concluding that Rule 23(a) unduly interfered with their religious beliefs by coercing them to make a "hard choice": either (1) submit to a jury trial against their religious beliefs, (2) admit guilt to avoid a jury trial, or (3) refuse to participate in the trial and risk further criminal sanction. *Id.* at 578. This "hard choice" effectively impeded the defendants' observance of their religion and rendered Rule 23(a) an undue burden on their free exercise of religion. *Id.*

The Appellants in the instant case argue that the lack of meaningful trial strategy choices in Court 8 creates a situation similar to the "hard choice" in *Lewis* by "eviscerat[ing]" defense counsels' strategic considerations and advice, and depriving the Appellants of both effective assistance of counsel and a meaningful choice about

---

3.  Because we do not view the parties' petitions as motions for change of judge, we are similarly unpersuaded by the State's claim that their petitions failed to comport with the requirements of Indiana Code section 35–36–5–2, which also governs motions for change of judge.

4.  The defendants' beliefs arose out of a literal interpretation of the Bible, particularly the Pentateuch, which in their view taught that God had ordained judges chosen from among the most learned of the community to resolve disputes between people and to pass judgment on individuals. *Lewis*, 638 F.Supp. at 575. On the basis of these teachings, the defendants understood God's will to require that they only submit themselves to judgment by judges. *Id.* at 575.

their trial format. Appellants' Br. p. 9. In making this argument, Appellants highlight their constitutional right to force the State to prove its allegations beyond a reasonable doubt. *See Hirsch v. State*, 697 N.E.2d 37, 43 (Ind.1998) ("Because of the presumption of innocence and the privilege against self-incrimination, the accused has a constitutional right literally to sit mute at trial and make the State prove every element of its case beyond a reasonable doubt.")

If the Appellants were constitutionally entitled to a bench trial in the same manner that the defendants in *Lewis* were entitled to the free exercise of their religion, we might be more persuaded that a State policy infringing upon that right, and the lack of meaningful strategy choices associated with that infringement, were more akin to the "hard choice" deemed unconstitutional in *Lewis*. But the Appellants' right to a bench trial is not analogous to the *Lewis* defendants' right to religious freedom. As a general matter, a defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Although a defendant's right to a bench trial has been recognized in certain limited circumstances, such circumstances do not apply here, as is discussed below. Accordingly, we are unpersuaded that the instant case is analogous to *Lewis* or that the State's alleged policy somehow violates the Appellants' Sixth Amendment right to effective assistance of counsel.

## III.  Bench Trial

The Appellants acknowledge *Singer* and the Indiana cases of *Alldredge v. State*, 239 Ind. 256, 258–60, 156 N.E.2d 888, 889–90 (1959), and *State ex. rel. Helm v. Fraser*, 260 Ind. 585, 586–87, 298 N.E.2d 423, 424 (1973), which interpreted the Indiana Constitution and current Indiana Code section 35–37–1–2 [5] as similarly not conferring upon defendants the right to a bench trial. The Appellants argue, however, that given their mental illness and its accompanying social stigma which would likely infect a jury pool, theirs are special circumstances so compelling that the State's refusal to waive jury trial denies them an impartial trial. It is true that, in spite of the widely recognized rule that a defendant is not constitutionally entitled to a bench trial, circumstances may exist which render the denial of a bench trial constitutionally suspect. In *Singer*, the United States Supreme Court added the following proviso to its conclusion that a defendant was not entitled to a bench trial:

> We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial. Petitioner argues that there might arise situations where "passion, prejudice ... public feeling" or some other factor may render impossible or unlikely an impartial trial by jury. However since petitioner gave no reason for wanting to forgo jury trial other than to save time, this is not such a case, and petitioner does not claim that it is.

*Id.* at 37–38, 85 S.Ct. 783.

Certain federal district court decisions have cited this language from *Singer* in concluding that a defendant's reasons for

---

**5.**  Indiana Code section 35–37–1–2 is former Indiana Code section 35–1–34–1 and Burns' § 9–1803. Each version contains the same language: "The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury."

wanting to be tried by a judge alone are adequately compelling to override the government's insistence on trial by jury. As already discussed, the *Lewis* court found the defendants' right to free exercise of religion a compelling basis upon which to order a bench trial. 638 F.Supp. at 578, 580. In *United States v. Braunstein*, 474 F.Supp. 1, 13–14 (D.N.J.1979), and *United States v. Panteleakis*, 422 F.Supp. 247, 249–50 (D.R.I.1976), the defendants' rights to fair trials were endangered by the complicated nature of their cases—involving Medicaid and Medicare fraud, respectively—and the potential prejudice of evidence admissible only with respect to certain defendants, which created a compelling basis to require a bench trial. In *United States v. Schipani*, 44 F.R.D. 461, 463 (E.D.N.Y. 1968), the defendant's right to a fair trial for income tax evasion was endangered by the overwhelming evidence—fundamental to the State's case—linking him to organized crime, again creating a compelling basis for a bench trial. In seeking relief in the instant case, the Appellants rely upon the *Lewis, Braunstein, Panteleakis,* and *Schipani* decisions to argue that their mental illness, in light of the negative public perception of mental illness, renders them incapable of receiving a fair trial by jury and constitutes a compelling basis for a bench trial.

In arguing that mental illness arouses the "passion, prejudice," or "public feeling" which they claim renders a jury trial unfair, the Appellants point to the federal case of *In re Ballay*, 482 F.2d 648, 668–69 (D.C.Cir.1973), in which the *Ballay* court discussed at length the "social ostracism" visited upon those with mental illness. The Appellants also point to certain steps taken by this court and the Indiana Supreme Court, such as using initials as identifiers, to protect mentally-ill parties. In addition, the Appellants reference a program entitled "Stigmabusters," sponsored by the National Alliance on Mental Illness, where concerned citizens are given a forum to report demeaning media portrayals of the mentally ill.

There can be little question that persons suffering from mental illness are subject to certain negative public perceptions, as this evidence and simple day-to-day experience show. But without evidence demonstrating otherwise, we cannot assume that negative public perceptions of mental illness necessarily place a mentally-ill defendant at risk or compromise his right to a fair trial when members of the public stand in his judgment. Negative public scrutiny and social ostracism, while no doubt disadvantageous in the social context, are just as likely—and perhaps more likely—to arouse compassion for a criminal defendant. It is no secret, nor would the public be unaware, that a defendant's mental illness can operate to nullify his criminal culpability. In the eyes of a public jury pool, therefore, a defendant's mental illness would just as likely garner sympathy as prejudice and operate to minimize his criminal culpability as much as maximize it. We therefore cannot conclude that any "passion, prejudice" or "public feeling" on the topic of mental illness renders an impartial jury trial impossible or even unlikely for these Appellants. Accordingly, we reject their assertion that, to the extent *Singer* grants a defendant a limited right to a bench trial, the denial of a bench trial in their case violates their constitutional right to a fair trial. We do so especially in light of the rarity of mandated bench trials in cases where the government refuses to waive its right to a jury. *See U.S. v. U.S. Dist. Ct. for E. Dist. Of Cal.*, 464 F.3d 1065, 1070 (9th Cir.2006) (observing that no United States Court of Appeals has approved a defendant's waiver of jury trial

over the government's objection).[6]

## IV. Equal Protection

■■■ The Appellants further contend that the State's policy allegedly refusing to waive jury trials for mentally ill defendants in Court 8 violates their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause provides that no state shall " 'deny to any person within its jurisdiction the equal protection of the laws.' " *Lake County Clerk's Office v. Smith,* 766 N.E.2d 707, 712 (Ind.2002) (quoting U.S. CONST. amend. XIV, § 1). The Equal Protection Clause " 'does not reject the government's ability to classify persons or 'draw lines' in the creation and application of laws, but it does guarantee that those classifications will not be based on impermissible criteria or arbitrarily used to burden a group of individuals.' " *Id.* (quoting *Phelps v. Sybinsky,* 736 N.E.2d 809, 818 (Ind.Ct.App. 2000) (internal quotation omitted)). In assessing a claim under the Equal Protection Clause, our first inquiry involves the applicable level of scrutiny. *Id.* Classifications not involving a suspect class or a fundamental right are reviewed under a rational basis test. *Id.* This test merely requires that the disparity of treatment be rationally related to a legitimate governmental purpose. *See Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

The Appellants' equal protection challenge is premised upon the assumption that the State's policy placed them into a separate class according to their mental illness. Yet the record before us fails to demonstrate that any such classification necessarily occurred. Although the State's policy allegedly covered persons charged with Class D felonies, all of whom—in Court 8—have some link to mental illness, there was no showing that the State's policy related to their mental illness. Indeed, the record lacked evidence that the State's policy extended to persons with mental illnesses in other courts, suggesting that the policy targeted Court 8 rather than the mentally-ill defendants appearing in Court 8. In addition, the Appellants do not argue that mentally-ill defendants charged with misdemeanors in Court 8 were also targeted by this policy, further refuting their claim of classification according to mental illness. Here, the most serious cases appearing in Court 8, namely Class D felonies, also happened to involve defendants with mental illnesses. The mere fact that the these two groups coincide does not transform the State's policy into a mental illness classification, especially in light of the lack of record evidence demonstrating that any other defendants with mental illness not accused of a Class D felony in Court 8 were covered by the policy.

In any event, Appellants concede that they are not in a suspect class and that the rational basis test applies. Here, assuming that the State has a policy of refusing to waive jury trials for Class D felony cases in Court 8, and assuming that all of those cases involve persons with mental illness, the record demonstrates that this policy is rationally related to a legitimate governmental purpose. As the party prosecuting defendants for alleged crimes in Court 8, it is the State's purpose to seek

---

**6.** The Appellants also claim entitlement to a bench trial under the Indiana Constitution but provide no separate analysis on that basis. Accordingly, we confine our analysis to federal constitutional doctrine only. *See Myers v. State,* 839 N.E.2d 1154, 1158 (Ind.2005) (observing that in spite of defendant's reference to the Indiana Constitution, his failure to develop a separate argument specifically treating and analyzing his claim under the Indiana Constitution rendered separate Indiana Constitutional analysis unnecessary).

their convictions. This is a legitimate governmental purpose.

Further, the State's policy of refusing to waive jury trials in Court 8 is rationally related to achieving this legitimate purpose. As Gerber testified, the State implemented its policy following a series of bench trials in which the trial court acquitted multiple defendants. The State was likely dissatisfied with this result and could have attributed it to the trier of fact. In an effort to avoid similar results in the future, it was rational for the State to refuse to submit itself to the fact-findings of this judge. To the extent the State's policy covered only Class D felonies, given the great resources expended on jury trials, it was rational for the State to limit its policy to the more serious crimes, which in Court 8 are Class D felonies. The fact that these Class D felonies also involve mentally ill defendants does not alter the rational relationship between the State's refusal to waive jury trials after multiple bench trials resulting in acquittals and its purpose of securing convictions, especially in its more serious cases. Given the State's legitimate purpose and the existence of a rational relationship between the State's policy and purpose, we reject the Appellants' challenge on Equal Protection grounds.

## V. Privileges and Immunities

■■■■■ The Appellants' final challenge alleges that the State's policy violates the "privileges and immunities" clause of the Indiana Constitution. Article I, Section 23 of the Indiana Constitution provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." The requirements of Article I, Section 23 "govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." *Dvorak v. City of Bloomington,* 796 N.E.2d 236, 238 (Ind.2003). Claims that actions violated the clause are subject to a two-part test. *Sims v. U.S. Fid. & Guar. Co.,* 782 N.E.2d 345, 353 (Ind.2003). First, the disparate treatment accorded by the governmental action must be reasonably related to inherent characteristics, which distinguish the unequally treated classes. *See id.* Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* In determining whether a governmental action violates the clause, courts must exercise substantial deference to the discretion of the governmental entity taking the action. *Bloomington Country Club, Inc. v. City of Bloomington Water & Wastewater Utils.,* 827 N.E.2d 1213, 1221 (Ind.Ct.App. 2005) (citing *Sims,* 782 N.E.2d at 353), *trans. dismissed.* The burden is "on the challenger 'to negative every conceivable basis which might have supported the classification.'" *Id.* (quoting *Sims,* 782 N.E.2d at 353 (internal quotation omitted)).

The Appellants' challenge is based upon their alleged classification according to mental illness. Yet, as we have already determined, the record demonstrates that a fully conceivable basis for their classification was their offense and court assignment, not their mental illness. Therefore, regardless of whether there is a reasonable relationship between the Appellants' mental illness and the State's policy, there is an entirely reasonable relationship between their offense and court assignment and the State's policy: they are charged with a relatively serious crime in a court where the State has lacked success in obtaining convictions in bench trials. Further, the record suggests that the policy uniformly applies to all defendants accused of Class D felonies in Court 8, further

reinforcing the Appellants' classification according to offense and court assignment. We find no privileges and immunities violation.

Having rejected the Appellants' constitutional challenges, we find no error in the trial court's denial of their motions to transfer.

The judgment of the trial court is affirmed.

CRONE, J., and BROWN, J., concur.