# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 03 2017, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony W. Brown, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | February 3, 2017 Court of Appeals Case No. 54A05-1605-CR-1087 Appeal from the Montgomery Superior Court The Honorable Heather Dennison, Judge Trial Court Cause No. 54D01-1505-F5-1419 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Anthony Brown appeals following his conviction for Level 5 felony possession of methamphetamine and the determination that he is a habitual offender. Specifically, Brown argues that the trial court abused its discretion in admitting certain evidence at trial. He alternatively argues that even if the trial court did not abuse its discretion in admitting the challenged evidence, his aggregate twelve-year sentence is inappropriate. We affirm.

# Facts and Procedural History

[2] On the morning of April 17, 2015, off-duty Crawfordsville Police Lieutenant Russ Keller observed a red 2010 Chevrolet Camaro leaving a known drug house belonging to Tim Summers. Lieutenant Keller also observed that the vehicle's license plate was expired. Lieutenant Keller relayed his observations to Crawfordsville Police Officer Jerod[1] Colley, who was on duty and patrolling the general vicinity around Summers's home that morning.

[3] At approximately 9:00 a.m., Officer Colley located the Camaro and followed it. After calling the Camaro's license plate information into dispatch, Officer Colley learned that the license plate on the vehicle was still valid, but was registered to a different vehicle. Specifically, the license plate was registered to

---

[1] The record is unclear as it provides inconsistent spellings of Officer Colley's first name, spelling it both "Jerod" and "Jared." Because the State utilizes the spelling "Jerod" in its brief, we will do the same in this memorandum decision. Our apologies to Officer Colley if this is not the proper spelling of his first name.

a 1999 Chevrolet Z-28. Officer Colley then observed the Camaro make an illegal turn, after which he activated his emergency lights and initiated a traffic stop.

[4] Upon approaching the Camaro, which was being driven by Brown, Officer Colley informed Brown of the reason for the traffic stop. Brown was unable to provide a valid registration for the vehicle or proof of insurance. Brown provided Officer Colley with a bill of sale and indicated that he had just purchased the Camaro. The bill of sale made no mention of the vehicle to which the license plate was registered and Brown indicated that the license plate was registered to a vehicle which he no longer owned.

[5] Officer Colley then asked Brown to exit his vehicle and inquired into where Brown was coming from. Brown indicated that he had come from Summers's home and that he knew Summers because they had previously worked together. Officer Colley asked Brown for permission to search the vehicle and Brown consented to the search.

[6] Officer Colley also said that he would like to pat Brown down for safety purposes. Brown "did not have an objection to [Officer Colley] conducting a weapons pat-down on him for [officer] safety." Tr. p. 55. Brown indicated that "he may be in possession of a knife" but that he "wasn't for sure where at on him." Tr. p. 55. As Officer Colley was conducting the pat-down search, Officer Colley discovered a plastic baggy containing a white powdery substance in Brown's right pocket. Brown eventually admitted that the substance

contained within the plastic baggy was "meth." Tr. p. 62. The substance was later tested and was confirmed to be methamphetamine.

[7] On May 7, 2015, the State charged Brown with Level 6 felony possession of methamphetamine. Brown was also alleged to be a habitual offender. The State subsequently sought permission to re-docket the charge as a Level 5 felony due to Brown's prior conviction for dealing in a controlled substance, which is an enhancing circumstance to the Level 6 felony possession of methamphetamine charge. The trial court granted the State's request for permission to re-docket the charge as a Level 5 felony in an order dated January 22, 2016.

[8] On March 10, 2016, Brown filed a motion to suppress certain evidence relating to the methamphetamine recovered during the traffic stop. Following a hearing, the trial court denied Brown's motion to suppress.

[9] The trial court conducted a two-day jury trial beginning on March 15, 2016. During trial, the State introduced evidence relating to the methamphetamine recovered from Brown's vehicle during the traffic stop. Brown objected to the admission of this evidence, arguing that it was recovered in violation of his constitutional rights. The trial court disagreed and admitted the State's proffered evidence over Brown's objection.

[10] At the end of trial on March 16, 2016, the jury found Brown guilty of Level 6 felony possession of methamphetamine. Brown subsequently pled guilty to the Level 5 felony enhancement and to being a habitual offender. On April 21,

2016, the trial court sentenced Brown to an aggregate executed term of twelve years.

# Discussion and Decision

[11] Brown contends that the trial court abused its discretion in admitting certain evidence relating to the methamphetamine recovered from his person during the traffic stop. Alternatively, Brown contends that even if the trial court did not abuse its discretion in admitting the challenged evidence, his aggregate twelve-year sentence is inappropriate in light of the nature of his offense and his character. We will discuss each contention in turn.

# I. Admission of Evidence

[12] Brown contends that the trial court abused its discretion in admitting evidence relating to the recovery of methamphetamine from his person during the traffic stop.

> The admission or exclusion of evidence is entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004). We will reverse a trial court's decision only for an abuse of discretion. *Id.* We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Taylor v. State*, 891 N.E.2d 155, 158 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.* In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence

on the jury. *Oldham v. State*, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002). Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence admitted. *Pavey v. State*, 764 N.E.2d 692, 703 (Ind. Ct. App. 2002).

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). "Moreover, the trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory." *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008) (citing *Gonser v. State*, 843 N.E.2d 947, 950 (Ind. Ct. App. 2006)).

[13] In arguing that the trial court abused its discretion in admitting the challenged evidence, Brown claims that the challenged evidence was recovered in violation of the Fourth Amendment to the United States Constitution.[2] "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Trotter v. State*, 933 N.E.2d 572, 579 (Ind. Ct. App. 2010) (internal citations omitted).

> Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769,

---

[2] Brown makes no separate argument under Article One, Section 11 of the Indiana Constitution. As such, Brown has waived any state constitutional claim, and we will review Brown's claim solely under the federal constitution. *See Lewis v. State*, 911 N.E.2d 76, 83 n.6 (Ind. Ct. App. 2009), *trans. denied*.

1772, 135 L.Ed.2d 89, 95 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003). An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred. *See State v. Washington*, 898 N.E.2d 1200, 1205 (Ind. 2008).

*Meredith v. State*, 906 N.E.2d 867, 869-70 (Ind. 2009).

[14] Brown concedes that the initial stop of his vehicle was permissible. However, Brown argues that Officer Colley improperly prolonged the stop by detaining Brown for longer than was necessary to issue Brown a citation for the illegal turn observed by Officer Colley. In support, Brown relies upon the United States Supreme Court's decision in *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015), in which the Supreme Court held that a traffic stop which is justified by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the officer's mission of issuing a traffic ticket for the observed traffic violation.

[15] Despite Brown's claim to the contrary, our review of the record, indicates that Officer Colley did not prolong the stop beyond the time reasonably required to complete Officer Colley's mission. The record indicates that at the time Officer Colley initiated the traffic stop, he had observed both that the license plate on the vehicle was not registered to the vehicle Brown was driving and that Brown had made an illegal turn. While Officer Colley arguably could have completed the task of writing Brown a ticket for the illegal turn without prolonging the

stop, the record indicates that at the time Officer Colley asked Brown to exit the vehicle, his investigation into the registration of the vehicle was ongoing.

[16] When Officer Colley approached the vehicle, Brown failed to provide a proper registration for the vehicle or proof of insurance. Brown provided a bill of sale and indicated that he had recently purchased the vehicle and that the license plate on the car was registered to a vehicle that Brown had previously owned. However, the bill of sale made no mention of the vehicle to which the license plate was registered and Brown failed to provide any documentation indicating that the license plate was properly registered to a vehicle belonging to him.

[17] Brown requested permission to look in the backseat of the vehicle to try to find valid proof of insurance. It was at this point that Officer Colley requested permission to search the vehicle. It is undisputed that Brown consented to the search.

[18] At this point, Officer Colley also requested permission to pat Brown down for safety purposes. Brown "did not have an objection to [Officer Colley] conducting a weapons pat-down on him for [officer] safety." Tr. p. 55. Brown indicated that "he may be in possession of a knife" but that he "wasn't for sure where at on him." Tr. p. 55. As Officer Colley was conducting the pat-down search, Officer Colley discovered a plastic baggy containing a white powdery substance in Brown's right pocket.

[19] Upon review, we cannot say that Officer Colley prolonged the traffic stop longer than was reasonable to complete his investigation into the apparent issue

with the vehicle's registration. Brown's vehicle was first brought to Officer Colley's attention due to the question surrounding the legality of the registration. It is not unreasonable that Office Colley would investigate the validity of the vehicle's registration upon stopping the vehicle. Accordingly, we conclude that the traffic stop was not prolonged such as to make it unlawful.

[20] Further, the fact that Officer Colley asked Brown about where he had been prior to the initiation of the traffic stop does not render the stop unreasonable as it did not prolong the traffic stop.

> During a lawful detention, police do not need a reasonable suspicion to ask questions of the detainee. In *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), the [United States Supreme] Court emphasized that it has "held repeatedly that mere police questioning does not constitute a seizure." 544 U.S. at 101, 125 S.Ct. at 1471, 161 L.Ed.2d at 308, quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of the individual[.]" *Id.*, quoting *Bostick*, 501 U.S. at 434–35, 111 S.Ct. at 2386, 115 L.Ed.2d at 398. An officer making a traffic stop can ask questions of a detained motorist, but the detainee is not obligated to respond, and "unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer v. McCarty*, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984) (footnotes omitted).

*Washington*, 898 N.E.2d at 1204. Again, Officer Colley asked questions of Brown during the course of his investigation into the validity of the vehicle's registration. The fact that Brown decided to answer Officer Colley's questions

and ultimately consent to a search of his vehicle and pat-down of his person do not make the stop, which was not prolonged by Officer Colley's questions, unreasonable. In sum, concluding that Officer Colley did not prolong the valid traffic stop longer than was reasonably necessary to complete his investigation into the validity of the vehicle's registration, we further conclude that the trial court did not abuse its discretion in admitting the evidence recovered as a result of said traffic stop.

## II. Appropriateness of Sentence

[21] Brown alternatively contends that his aggregate twelve-year sentence is inappropriate. We disagree.

[22] Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[23] With respect to the nature of Brown's offense, the record demonstrates that Brown possessed methamphetamine and that Brown is a habitual offender. In support of his claim that his sentence is inappropriate, Brown points to the fact that he cooperated with Officer Colley's requests during the traffic stop and his arrest. While this may be true, we also note that Brown's offense was elevated to a Level 5 felony due to his prior conviction for Class B felony dealing in a schedule II controlled substance. In addition, the habitual offender determination is supported by Brown's extensive criminal history. It is also of note that in exchange for Brown's guilty plea to the Level 5 felony enhancement and habitual offender determination, the State agreed to dismiss an unrelated case in which Brown was charged with Level 4 possession of methamphetamine and faced an additional twelve-year sentence.

[24] With respect to Brown's character, the record demonstrates that Brown has an extensive criminal history. Specifically, with respect to Brown's criminal history, the Montgomery County Probation Department noted that Brown "has an extensive criminal history which began as a juvenile" and that Brown "has served the majority of his adult life in prison, on parole, probation or home detention." Appellant's App. Vol. II (Confidential), p. 108. Brown's criminal history includes juvenile adjudications leaving home without permission of a parent and three adjudications for what would have been Class D felony theft if committed by an adult. Brown's criminal history also included the following convictions: Class B felony dealing in a schedule II controlled substance, six counts of Class B felony burglary, two counts of Class C felony forgery, three

counts of Class D felony theft, Class A misdemeanor check deception, Class A misdemeanor driving while suspended, Class A misdemeanor carrying a handgun without a license, and Class A misdemeanor false informing. Brown was also charged with two unrelated charges for Level 3 felony possession of methamphetamine while awaiting trial in the instant matter. It also appears that on at least one occasion, Brown has been found to be in violation of the terms of his placement on community corrections. In addition, Brown reported that he has previously been disciplined while in prison for a "failed drug screen," receiving a "loss of good time." Appellant's App. Vol. II (Confidential), p. 108.

[25] In claiming that his sentence is inappropriate with respect to his character, Brown argues that "[i]n the two and one-half years prior to his arrest, he ran a successful business as a building contractor and he employed a crew of individuals through that business" and "[b]ecause Brown is apparently a skilled contractor and operated his own business, there is evidence that he can become a productive member of society if given an opportunity outside of prison." Appellant's Br. p. 17. Brown also argues that he was the primary breadwinner for his fiancée and their children. Brown's arguments, however, are undercut by his statement at sentencing indicating that he chose not to work in an attempt to avoid an outstanding warrant for his arrest.

[26] Brown's substantial criminal history indicates that he has not only a disdain for the criminal justice system, but also a disdain for the rights and safety of others. Moreover, the Montgomery County Probation Department indicated that a risk

assessment of Brown placed him in the "High" category to re-offend. Appellant's App. Vol. II (Confidential), p. 108. As such, we conclude that Brown has failed to prove that his sentence is inappropriate in light of the nature of his offenses and his character.

# Conclusion

[27] Concluding that the trial court did not abuse its discretion by admitting the challenged evidence and that Brown has failed to prove that his sentence is inappropriate, we affirm the judgment of the trial court.

[28] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.